William F. STRINGER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 94–SC–818–MR.

Supreme Court of Kentucky.

Nov. 20, 1997.

Mark J. Stanziano, Somerset, for Appellant.

A.B. Chandler, III, Attorney General, Joseph R. Johnson, Criminal Appellate Division, Office of Attorney General, David A. Sexton, Criminal Appellate Division, Office of Attorney General, Dina Abby Jones, Criminal Appellate Division, Office of Attorney General, Frankfort, David A. Tapp, Special Assistant Attorney General, Somerset, for Appellee.

COOPER, Justice.

Appellant was convicted in the Pulaski Circuit Court of three counts of first-degree sodomy and two counts of first-degree sexual abuse. He was sentenced to confinement for twenty years on each of the sodomy convictions and confinement for one year on each of the sexual abuse convictions, all to run concurrently each with the others. He appeals to this court as a matter of right. Ky. Const. § 110(2)(b).

The indictment charged Appellant with four counts of first-degree sodomy and ten counts of first-degree sexual abuse of J.V., a minor child less than twelve years of age. In addition, he was charged with three counts of first-degree sexual abuse of N.P., B.C., and K.G., also children less than twelve years of age. He was acquitted of all counts except three counts of first-degree sodomy of J.V. and two counts of first-degree sexual abuse of J.V.

## I. SUFFICIENCY OF THE EVIDENCE

J.V. testified that she was born on October 22, 1983 and that she was ten years old when the trial was held in May–June, 1994. The indictment charged offenses occurring in September and October 1992. At that time, J.V. was enrolled at Bev's Day Care Center, which was owned and operated by Beverly Mitchell, Appellant's daughter. Appellant lived two houses from the day care center and, although he was not employed by the center, he ran errands for Mitchell and transported children in his van. J.V. testified that the first incident of sexual abuse occurred after Appellant had taken all of the other children home in the van. He then drove J.V. to the fairgrounds, where he subjected her to acts of sexual contact and oral sodomy. The second occasion occurred under similar circumstances at Trinity Springs, where Appellant again subjected J.V. to sexual contact and oral sodomy. The third occasion occurred again at the fairgrounds, where J.V. claimed Appellant subjected her to sexual contact and two separate acts of oral sodomy. J.V. testified to other acts of sexual contact which are not relevant to this appeal, since Appellant was found not guilty of those charges.

Appellant claims the evidence was insufficient to prove his guilt because J.V. failed to testify to specific dates and times when the acts of sexual abuse occurred. In a felony case, the failure to prove the specific date of

the offense is of no consequence unless time is a material ingredient of the offense. *Peyton v. Commonwealth,* 288 Ky. 601, 157 S.W.2d 106 (1941). In both *Browning v. Commonwealth,* Ky., 351 S.W.2d 499 (1961) and *Salyers v. Commonwealth,* Ky., 255 S.W.2d 605 (1953), it was held that the date of the act of incest is not a necessary element of the offense and that it sufficed that the Commonwealth proved that the offense was committed prior to the rendition of the indictment. In *Hampton v. Commonwealth,* Ky., 666 S.W.2d 737 (1984), another child sex abuse case, the testimony concerning the dates of the offenses was confused and somewhat uncertain. In one instance, the child testified the offenses occurred on the same date at another place; in another instance, he testified to an offense occurring on "another Saturday." We held that the evidence was as specific as is usually found in such cases and ample to separately identify the various offenses charged. In *Farler v. Commonwealth,* Ky.App., 880 S.W.2d 882 (1994), the child victim could not pinpoint the exact dates on which the incidents occurred. However, she testified that all of the sexual contact occurred before she reached twelve years of age and after the defendant had reached eighteen years of age. "In our view, it was not necessary that [the victim] give specific dates that the offenses occurred. It would be wholly unreasonable to expect a child of such tender years to remember specific dates...." *Id.* at 886. We agree. The offenses obviously occurred when J.V. was less than twelve years of age, and that was the only relevant time element necessary to support these convictions. KRS 510.070(1)(b)2; KRS 510.110(1)(b)2.

## II. TESTIMONY OF J.V.

■ On the recommendation of J.V.'s treating psychologist, J.V. was permitted to testify from the circuit court library. Her testimony was transmitted by closed circuit television to a monitor in the courtroom where it was viewed by the jury and courtroom spectators. Appellant was permitted to remain in the library where he could observe J.V. "face to face" during her testimony. Ky. Const., § 11. The trial judge explained his decision as follows:

> The Court sympathizes with the need to permit young children to testify in a non-threatening environment. The Court will allow the Commonwealth to present the testimony of the children through closed circuit television transmission from the circuit court library into the circuit courtroom before the jury. Based on the Court's experience with the competency hearing, the Court finds that the children are capable of testifying in the presence of the Defendant. The Court therefore shall allow the Defendant to be present in the library when each child testifies so that his rights under the confrontation clause may be respected. The Defendant may choose, at his option, to remain in the courtroom in the presence of the jury while the children testify.

The procedure used in this case was much more favorable to Appellant than that authorized by KRS 421.350(3) and approved in *Commonwealth v. Willis,* Ky., 716 S.W.2d 224 (1986). Since Appellant was permitted to remain in the same room with the witness during her testimony, there was no implication of the confrontation clauses of the Sixth Amendment of the United States Constitution or Section 11 of our Constitution. Appellant cites no authority for the proposition that a witness and the jury must be in the same room during the witness's testimony. Modern technology permits the procedure allowed in this case without impairing the jury's ability to observe the witness's demeanor during her testimony. The trial judge did not abuse his discretion in permitting this procedure and no violation of Appellant's constitutional rights resulted.

■ Appellant also claims it was error to permit J.V. to use anatomically detailed dolls while describing the acts perpetrated against her by Appellant. In *Souder v. Commonwealth,* Ky., 719 S.W.2d 730 (1986), we held that a social worker could not describe to the jury the child victim's out-of-court manipu-

lation of anatomically detailed dolls, because the manipulation of the dolls was a nonverbal communication, thus hearsay. Here, the child victim manipulated the dolls as she was testifying. In that context, her use of the dolls was no different than the employment by a witness of any other appropriate visual aid. *See Hellstrom v. Commonwealth,* Ky., 825 S.W.2d 612, 615–16 (1992).

### III. TESTIMONY OF J.V.'S MOTHER

■ Appellant asserts it was error to permit J.V.'s mother to testify that when she told J.V. on November 4, 1994, that Appellant would bring her home from the day care center on the following day, J.V. responded, "Please don't make me ride with him." This statement is not hearsay, since it does not purport to prove the truth of the matter asserted. What it tends to prove is that J.V. was then in fear of Appellant. Thus, the statement was admissible as a nonhearsay utterance reflecting the state of mind of the declarant. *L.K.M. v. Department for Human Resources,* Ky.App., 621 S.W.2d 38 (1981); R. Lawson, *The Kentucky Evidence Law Handbook* § 8.05, pp. 364–65 (3rd ed., Michie, 1993).

■ Appellant also claims error with respect to a second statement of J.V.'s mother, which she made during the prosecutor's attempt to elicit proof that J.V. was referred to William House for the purpose of treatment and not merely for evaluation. The colloquy was as follows:

Q. Okay—let me back up here. I am not sure that I am phrasing the question correctly. Did you learn—did someone tell you that [J.V.] had been sexually abused?

[Objection.]

[Overruled.]

A. No, [J.V.] was the one that told me that.

Q. Okay—thank you.

A. It was her.

Q. And, as a result of allegations for things that you had heard, did, at some point, you obtain some type of counseling for [J.V.]?

A. Yes, I did.

Q. Okay—with whom?

A. With William House.

In analyzing whether an "out-of-court" statement is inadmissible hearsay, the "ultimate inquiry is ... whether the statement has a relevancy that exists without regard to the truth of the assertions contained in the statement." Lawson, *supra,* § 8.05, p. 368. In *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988), we said with respect to information furnished to police officers that:

> The rule is that a police officer may testify about information furnished to him only where it tends to explain the action that was taken by the police officer as a result of this information *and* the taking of that action is an issue in the case. Such information is then admissible, not to prove the facts told to the police officer, but only to prove why the police officer then acted as he did. It is admissible *only if* there is an issue about the police officer's action.

*Id.* at 541; *see also Ruppee v. Commonwealth,* Ky., 821 S.W.2d 484, 485 (1991). Whether J.V. was referred to Mr. House for treatment or evaluation and whether the referral was at the behest of J.V.'s mother or the police were both contested issues in this case. Thus, J.V.'s mother's explanation of why she referred J.V. to Mr. House was relevant without regard to the truthfulness of J.V.'s assertion that she had been abused. We do not regard this form of nonhearsay as confined solely to the testimony of police officers.

■ Furthermore, J.V.'s statement to her mother did not identify Appellant as the perpetrator of the abuse. J.V., herself, testified at great length and detail concerning the abuse perpetrated against her by Appellant, and the jury heard Appellant's recorded confession to the acts of sodomy and sexual abuse of which he was convicted. Thus, even if there had been a hearsay aspect to J.V.'s out-of-court statement, any error in its ad-

mission would have been harmless. R.Cr. 9.24; *Yarnell v. Commonwealth,* Ky., 833 S.W.2d 834 (1992); *Patterson v. Commonwealth,* Ky., 555 S.W.2d 607 (1977).

## IV. TESTIMONY OF WILLIAM HOUSE

■ William R. House is a certified psychological counselor and cognitive therapist. He has a masters degree in counseling and eighteen years experience in the field. He testified that the purpose of his counseling of J.V. was to address any emotional problems she may have been suffering as a result of sexual abuse. Appellant claims it was error to permit House to repeat statements made to him by J.V. describing the sexual abuse and identifying Appellant as the perpetrator. The trial judge made a KRE 104(a) finding that the statements were made for the purpose of treatment or diagnosis related to the cause or external source of her symptoms. KRE 803(4). In *Edwards v. Commonwealth,* Ky., 833 S.W.2d 842 (1992), we held that statements made by a child sexual abuse victim to a clinical psychologist for the purpose of psychological therapy fell within the parameters of KRE 803(4). We also held that statements of the identity of the perpetrator are generally admissible if offered by one treating the child for psychological injuries and the abuser was a household member. *Id.* at 844, citing *United States v. Renville,* 779 F.2d 430 (8th Cir.1985). Although Appellant was not a member of J.V.'s household, he was in a position of special trust, so that his continued access to J.V. could exacerbate the psychological conditions for which she was being treated.

■ Appellant also asserts that House erroneously was permitted to vouch for the credibility of J.V. House testified that he was initially concerned that J.V. might have been "coached." Subsequently, however, he found J.V.'s responses to be "consistent" and supported by "internal logic," and that such alleviated his initial concerns. He concluded his direct testimony by stating that "I felt that I trusted [J.V.]—or the veracity of the statements and so forth."

■ Generally, a witness may not vouch for the truthfulness of another witness. *Hall v. Commonwealth,* Ky., 862 S.W.2d 321, 323 (1993); *Hellstrom v. Commonwealth, supra,* at 614 (1992). However, there was no contemporaneous objection to any of these statements. R.Cr. 9.22; *Commonwealth v. Preece,* Ky., 844 S.W.2d 385 (1992), *cert. denied,* 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 36 (1993). At one point during House's examination, defense counsel argued, "He cannot—that is a comment on somebody's truthfulness." However, this objection was made not in response to the testimony in which House vouched for the truthfulness of J.V.'s statements, which occurred four pages prior to this objection and six pages thereafter in the transcript of evidence, but during an objection to a question which asked House to relate "what statements [J.V.] made, concerning those difficulties she was experiencing." If a party does not timely inform the trial judge of the alleged error and request the relief to which he considers himself entitled, the issue is not preserved for appellate review. *West v. Commonwealth,* Ky., 780 S.W.2d 600, 602 (1989). Nor do we believe that the admission of this evidence constituted "manifest injustice" so as to rise to the level of palpable error. R.Cr. 10.26; *Schambon v. Commonwealth,* Ky., 821 S.W.2d 804 (1991); *Jackson v. Commonwealth,* Ky.App., 717 S.W.2d 511 (1986).

■ Finally, Appellant asserts error in the trial judge's refusal to require House to produce his office records regarding his treatment of J.V. The records were not subpoenaed and House did not bring them to trial, but testified from memory. He informed the trial judge that his records did not contain any statements of J.V. and the judge accepted his word. Contrary to Appellant's assertion, *Anderson v. Commonwealth,* Ky., 864 S.W.2d 909 (1993) does not require production of these records. That case dealt only with production of a prior statement of a witness who testified at trial. Since House did not rely on his records in giving his testimony, the trial judge did not abuse his discretion in declining to order him to re-

trieve them from his office and bring them to the courthouse for perusal by defense counsel. *Cf. Bussey v. Commonwealth*, Ky., 697 S.W.2d 139, 142 (1985).

## V. TESTIMONY OF DR. LARRY NUNEMAKER

■ Dr. Nunemaker is a licensed obstetrician/gynecologist. He testified that his examination of J.V. revealed some hypertrophy and tearing in the vaginal area as well as some stretching and partial destruction of the hymen. He testified over objection that "those findings were compatible with [J.V.'s] history that she had given me" and with "something being inserted in there, and, trying to stretch it." Appellant claims that the admission of this testimony is precluded by our holdings in *Brown v. Commonwealth*, Ky., 812 S.W.2d 502 (1991) and *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856 (1993), and that the facts in *Alexander* are indistinguishable.

Qualified medical experts traditionally have been permitted to testify to the cause of a physical condition. *E.g., Hellstrom v. Commonwealth, supra*, at 617; *Pevlor v. Commonwealth*, Ky., 638 S.W.2d 272 (1982), *cert. denied*, 459 U.S. 1149, 103 S.Ct. 794, 74 L.Ed.2d 998 (1983); *Hicks' Adm'x v. Harlan Hospital*, 231 Ky. 60, 21 S.W.2d 125, 126 (1929). "A sufficiently qualified witness may testify as to whether certain detailed occurrences would be a natural, sufficient, probable, or possible cause of a certain physical result, or of death." 32 C.J.S. *Evidence*, § 644. It was not until *Brown v. Commonwealth, supra*, that this virtually universal rule was called into question in this jurisdiction. There, convictions of rape and incest of a child were reversed partially because a qualified medical doctor was permitted to testify to the approximate age of a cervical tear observed during her examination of the victim. Even though the doctor did not purport to state what caused the tear, her testimony was characterized as "opinion testimony as to the ultimate issue." *Id.* at 504. In *Alexander v. Commonwealth, supra*, convictions of rape and sodomy of a child were

reversed partially because a qualified medical doctor was permitted to testify that a small tear of the victim's hymenal ring was "consistent" with the medical history of vaginal intercourse with an adult. *Brown v. Commonwealth, supra*, was cited as authority for holding that admission of this testimony was reversible error. *Alexander, supra*, at 862. In *Turner v. Commonwealth*, Ky., 914 S.W.2d 343 (1996), we held that it was not error to permit two doctors to testify that their physical findings were "not inconsistent" with the child victim's history of sexual abuse. (In retrospect, we are unable to discern a distinction between "consistent" and "not inconsistent.") While *Turner* represented a modest retreat from *Brown* and *Alexander*, it did not overrule them.

*Brown* and *Alexander* are based on a false premise that any opinion which makes the existence of the ultimate fact more probable than not is an "opinion as to the ultimate issue" and, for that reason, inadmissible. In fact, the definition of relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. If Dr. Nunemaker had testified that he believed Appellant to be guilty, such would have been an opinion as to the ultimate issue. However, an opinion that a result is consistent with a factual scenario is not an opinion that the scenario occurred.

The real question should not be whether the expert has rendered an opinion as to the ultimate issue, but whether the opinion "will assist the trier of fact to understand the evidence or to determine a fact in issue." KRE 702. Generally, expert opinion testimony is admitted when the issue upon which the evidence is offered is one of science and skill, *Greer's Adm'r v. Harrell's Adm'r*, 306 Ky. 209, 206 S.W.2d 943 (1947), and when the subject matter is outside the common knowledge of jurors. *O'Connor & Raque Co. v. Bill*, Ky., 474 S.W.2d 344 (1971). Presumably, jurors do not need assistance in the form of an expert's opinion that the defen-

dant is guilty or not guilty. However, they usually do need the assistance of a medical expert in determining the cause of a physical condition in order to understand the evidence and determine the ultimate fact in issue. KRE 401; KRE 702.

Until *Hampton v. Commonwealth, supra,* we followed the majority rule as expressed in the Federal Rules of Evidence, FRE 704, and the Uniform Rules of Evidence (U.L.A.), Rule 704, that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. *Department of Highways v. Widner,* Ky., 388 S.W.2d 583 (1965); Lawson, *supra,* § 6.25. In *Hampton,* another child sexual abuse case, we upheld a trial judge's decision to exclude the opinion of a clinical social worker that the defendant's psychological development by history indicated that the twelve-year-old victim was too young to be attractive to him. The trial judge held that the witness was unqualified to express such an opinion. On appeal, we agreed, but additionally held that the opinion was inadmissible because it invaded the province of the jury. *Hampton, supra,* at 742. In so doing, *Hampton* made no mention of *Department of Highways v. Widner, supra,* which had overruled a long line of cases holding that an expert could not render an opinion as to the ultimate issue. In *Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549, 553 (1985), we followed *Hampton* and upheld a trial judge's decision to exclude expert testimony that a defendant's psychological profile was inconsistent with that of a sex offender, "because it went to the ultimate issue of innocence or guilt." *Id.* at 553. Since *Pendleton,* our decisions on this issue have been inconsistent not only with respect to what is or is not the ultimate issue, but also with respect to what constitutes an expression of opinion on that issue, *viz:*

1. In *Wemyss v. Coleman,* Ky., 729 S.W.2d 174 (1987), we held that a properly qualified expert witness could express an opinion that the failure of a driver to use a seat belt was a contributing cause of injuries received in an automobile accident.

2. In *Kroth v. Commonwealth,* Ky., 737 S.W.2d 680 (1987), a police officer was permitted to express his opinion that the defendant would not possess the quantity of drugs in his possession except for the purpose of sale.

3. In *Carpenter v. Commonwealth,* Ky., 771 S.W.2d 822 (1989), a doctor was permitted to express his opinion that the child victim's physical condition was caused by physical abuse. Citing *Department of Highways v. Widner, supra,* and not mentioning *Pendleton v. Commonwealth, supra,* it was held that, "Opinion testimony is admissible where it appears that the trier of fact would be assisted in the solution of the ultimate problem." *Carpenter, supra,* at 825.

4. In *Brown v. Commonwealth, supra,* it was held that a doctor's testimony as to the age of a cervical tear was an opinion as to the ultimate issue.

5. In *Sargent v. Commonwealth,* Ky., 813 S.W.2d 801 (1991), a police officer was permitted to express his opinion that the marijuana possessed by the defendant was of such quantity as to have been possessed for the purpose of sale, citing *Kroth, supra.*

6. In *Hellstrom v. Commonwealth, supra,* it was held that a witness's opinion that "delayed disclosure" is common among victims of child sexual abuse was an expression of an opinion on the ultimate issue. (The witness also was found to be unqualified to express an expert opinion on the subject.) However, it was held in the same case that it was not error to admit a doctor's opinion that physical changes observed during examination of the child victim's external genitalia were consistent with her history of sexual abuse.

7. In *Turfway Park Racing Ass'n v. Griffin,* Ky., 834 S.W.2d 667 (1992), an economic expert was permitted to express his opinion as to the damage sustained by the plaintiff's estate as a result of his wrongful death.

8. In *Hall v. Commonwealth, supra,* an expert's opinion that if a child repeats the same statement consistently over a period of

time, the statement is likely true, was held to be an opinion as to the ultimate issue.

9. In *Alexander v. Commonwealth, supra,* a doctor's opinion that a small tear in the child victim's hymenal ring was consistent with a medical history of vaginal intercourse with an adult was held inadmissible as an expression of opinion as to the ultimate issue, citing *Brown, supra,* but not mentioning *Hellstrom, supra.*

10. In *Cecil v. Commonwealth,* Ky., 888 S.W.2d 669 (1994), a psychologist's opinion that the defendant was acting intentionally when she killed her victim was held admissible because "the testimony was offered to assist the trier of fact in understanding the evidence of mental illness, and in *determining the fact in issue* of the appellant's ability to form the intent to commit murder." *Id.* at 675. (Emphasis added.)

11. In *Renfro v. Commonwealth,* Ky., 893 S.W.2d 795 (1995), it was held that an opinion of an accident reconstruction expert that the accident was caused by the defendant's driving in the wrong lane, running a red light, being under the influence of alcohol, and driving at a high rate of speed improperly invaded the province of the jury, but was "harmless error."

12. In *Turner v. Commonwealth, supra,* the opinions of two doctors that the child victim's history was "not inconsistent" with their physical findings were held to have been properly admitted.

13. In *Newkirk v. Commonwealth,* Ky., 937 S.W.2d 690 (1996), an expert's opinion that it is common for victims of child sexual abuse to recant was held to be an opinion "synonymous" with the ultimate fact of guilt.

In a criminal case, the ultimate fact in issue is whether the defendant is guilty or not guilty. Whether the physical findings testified to by Dr. Nunemaker were consistent with sexual abuse is only a relevant evidentiary fact tending to make the ultimate fact more or less probable. KRE 401. As Professor Lawson politely notes:

> The end result of these developments is extreme difficulty in the lower courts in

determining admissibility of expert testimony embracing ultimate issues. The most one can say in summary of this part of the law is that expert opinion testimony *may be inadmissible in some instances* because it embraces ultimate issues of fact.

Lawson, *supra,* § 6.25, p. 313.

Part of our responsibility as the highest Court of this Commonwealth is to provide guidance for our trial judges as to how we expect them to conduct their trials. No doubt, the inherent inconsistency in our decisions with respect to the so-called "ultimate issue" rule is why these same issues continue to recur. The "ultimate issue" rule reflects a distrust of the jury's ability to separate the wheat from the chaff and, in that respect, is an anachronism. "[The] common sense view is to receive the opinion testimony where it appears that the trier of fact would be assisted rather than impeded in the solution of the ultimate problem." *Department of Highways v. Widner, supra,* at 586–87, quoting 2 *Jones on Evidence,* § 418 (5th ed.). This common sense view is now codified in KRE 702.

We now once again depart from the "ultimate issue" rule and rejoin the majority view on this issue. Expert opinion evidence is admissible so long as (1) the witness is qualified to render an opinion on the subject matter, (2) the subject matter satisfies the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), (3) the subject matter satisfies the test of relevancy set forth in KRE 401, subject to the balancing of probativeness against prejudice required by KRE 403, and (4) the opinion will assist the trier of fact per KRE 702. *Brown v. Commonwealth, supra,* and *Alexander v. Commonwealth, supra,* are overruled insofar as they hold otherwise. Our departure from the "ultimate issue" rule does not contravene KRE 1102 and 1103. Our failure to adopt proposed KRE 704 simply left the "ultimate issue" unaddressed in the Kentucky Rules of Evidence and, therefore, subject to common law interpretation by proper application of

the rules pertaining to relevancy, KRE 401, and expert testimony, KRE 702. If we had wished to adopt a rule of evidence precluding any expert opinion embracing the ultimate issue, it would have been a simple matter to have done so when we approved the Rules of Evidence and submitted them to the legislature in 1991. We note that the rules, as adopted, also left open other issues, *e.g.*, the "habit" rule (proposed KRE 406) and the "eavesdropper" rule (proposed KRE 502); and that still other evidence issues, *e.g.*, bias of a witness, are not specifically addressed in the rules, but are resolved by proper application of other rules, such as KRE 401.

The opinion rendered by Dr. Nunemaker in this case concerned a subject peculiarly within the knowledge of a trained physician and was likely to assist the jury in determining whether J.V. had been sexually abused by Appellant. There was no error in the admission of this testimony.

## VI. SUPPRESSED EVIDENCE

The trial judge suppressed evidence offered by Appellant in four respects.

■ 1. Appellant sought to introduce some handwritten notes contained in records prepared by a previous owner of the day care center describing conduct by J.V. which occurred in 1989. One entry related that J.V. was observed touching her vaginal area with her hand during naps. Another related that J.V. teased the boys at the center by raising her dress. The trial judge excluded this evidence as being nonspecific and too remote in time.

Evidence of the character of the victim of criminal sexual conduct is generally inadmissible. KRE 404(a)(2). KRE 412(b) sets forth three exceptions to this rule, which may be summarized as follows: (1) to prove Appellant was not the source of the semen or injury; (2) to prove that the victim consented to the sexual behavior; or (3) to prove any other fact directly pertaining to the offense charged. The proffered evidence did not tend to prove any other cause of J.V.'s vaginal abnormalities. Consent is not a defense to sexual misconduct with a child under the age of twelve. Finally, since the evidence concerned events occurring three years prior to the events for which Appellant was indicted, they could not have directly pertained to the offenses charged. The evidence was properly excluded. *Billings v. Commonwealth*, Ky., 843 S.W.2d 890, 894 (1992).

■ 2. Dr. Terence Campbell testified by avowal that children are generally suggestible and may be improperly influenced by adult interrogators if proper procedures are not followed. Since the interviews of J.V. were neither videotaped nor audiotaped, Dr. Campbell could not ascertain whether proper procedures had been followed in this case. Thus, he presumed that proper techniques were not followed and, *ergo*, the testimony of the children was unreliable. This proposed hypothesis premised upon speculation was properly excluded as irrelevant.

■ 3. Lora Poynter was the mother of another child suspected of having been abused by Appellant. She proposed to testify that she did not approve of the manner in which the social workers interviewed her daughter. However, she had no background which would qualify her to render an opinion on that subject.

■ 4. Ernest Alexander was the father of another child suspected of having been abused by Appellant. He was of the opinion that the social workers were already convinced of Appellant's guilt. No social worker rendered an opinion as to Appellant's guilt at trial. In the absence of any proof that the social workers falsified evidence, Alexander's opinion was irrelevant.

For the reasons stated herein, the judgments of conviction and the sentences imposed by the Pulaski Circuit Court are affirmed.

GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., concurs by separate opinion.

LAMBERT, J., concurs in result only by separate opinion, with STEPHENS, C.J., joining that concurring in result only opinion.

STUMBO, J., dissents by separate opinion with LAMBERT, J., joining Part II of that dissent.

STEPHENS, Chief Justice, concurring.

Recognizing the law of the Commonwealth, I concur in the result reached by the majority. However, I renew my constitutional objection to KRS 421.350, as stated in my dissent in *Commonwealth v. Willis*, Ky., 716 S.W.2d 224, 234 (1986).

LAMBERT, Justice, concurring in result only.

While I concur that appellant's conviction should be affirmed, I write separately to express my substantial disagreement with important aspects of the majority opinion. In general, I view the majority opinion as an undesirable departure from heretofore settled Kentucky law.

Appellant has claimed error in the admission of hearsay evidence from William House, a psychologist counselor who provided treatment to J.V. after the allegations of sexual abuse were made. At trial, House testified that J.V.'s mother brought the child to him for counseling for sexual abuse. While on the witness stand, he related statements made by J.V. during counseling alleging that appellant "took my underwear off" and "put his mouth down there."

The Commonwealth contends that House's testimony was admissible under KRE 803(4), which allows:

[s]tatements made for purposes of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis.

When considering whether this hearsay exception applies, a trial court must look to the relationship between the declarant and the professional to evaluate the probable reliability of the statements at issue. *See, e.g., Edwards v. Commonwealth*, Ky., 833 S.W.2d 842 (1992); *Jones v. Commonwealth*, Ky., 833 S.W.2d 839 (1992). A party seeking admission of hearsay statements under KRE 803(4) must "lay sufficient foundation to show the relevance and reliability of the hearsay statements made by the victim...." *Jones, supra* at 841. Whether the physician or psychologist saw the declarant for treatment or for evaluation is a "primary factor" in the trial court's analysis of admissibility. Statements made to an evaluating physician "have less inherent reliability" than those made to one for the purposes of treatment. *Bell v. Commonwealth*, Ky., 875 S.W.2d 882, 887 (1994). In *Sharp v. Commonwealth*, Ky., 849 S.W.2d 542 (1993), this Court maintained the distinction between treating and examining physicians while recognizing the flexibility articulated in *Drumm v. Commonwealth*, Ky., 783 S.W.2d 380 (1990).

Measured against these standards, there was no error in the admission at trial of J.V.'s statements to the counselor, Mr. House. J.V.'s mother brought her daughter to House for counseling. The child underwent an estimated twenty-two counseling sessions with House, ranging from forty-five minutes to as long as two hours in length. At trial, House described his role as helping J.V. with her emotional problems stemming from sexual abuse. The trial court found House to be "sufficiently qualified that he is ... a treating counselor in this situation," and allowed admission of the statements under KRE 803(4). From the facts detailed above which show a substantial course of treatment, the court acted within its discretion in making its determination.

Appellant also claims that Mr. House unfairly prejudiced his defense with an expression of belief in the truthfulness of J.V.'s allegations of sexual abuse. During the Commonwealth's direct examination House said his general function as a counselor is to determine "why the individual—and, in this case, a child—is there, what has happened,

and, how to help that situation." In J.V.'s case, he worried initially that the child might have been "coached." After interviewing J.V., however, House told the jury that he found J.V.'s answers to be "consistent" and supported by "internal logic." When asked by the Commonwealth if J.V.'s responses to his questions "alleviated" his concerns about her being coached, House replied "Yes, it did." House's direct testimony ended with his assertion that "I felt that I trusted [J.V.]—or the veracity of the statements and so forth." Appellant argues that with this testimony House improperly expressed an opinion on witness credibility and invaded the province of the jury.

Quite clearly, House's opinion testimony as to J.V.'s credibility was improper. In essence, House told the jury that he had examined J.V.'s version of the events and believed she was being truthful. This Court has often expressed disapproval of testimony which "remove[s] the jury from its historic function of assessing credibility." *Newkirk v. Commonwealth*, Ky., 937 S.W.2d 690 (1996). Indeed, several of our decisions specifically condemn the use of expert testimony to bolster the credibility of children who are allegedly the victims of sexual abuse. *See, e.g., Newkirk, supra; Hall v. Commonwealth*, Ky., 862 S.W.2d 321 (1993). *Hellstrom v. Commonwealth*, Ky., 825 S.W.2d 612 (1992), stated our view as follows:

> "Psychologists and psychiatrists are not ... experts at discerning the truth. Psychiatrists are trained to accept facts provided by their patients, not to act as judges of their patients' credibility."

> This same legal reasoning applies with much greater force to the testimony of a social worker, however well qualified.

*Hellstrom, supra* at 614 (citation omitted). Moreover, *Hellstrom* equated comment on witness credibility with an expression of opinion on the ultimate fact in issue, a practice we have likewise disapproved. *See Hall v. Commonwealth, supra; Newkirk v. Commonwealth, supra; Hester v. Commonwealth*, Ky., 734 S.W.2d 457 (1987); and

Lawson, *Kentucky Evidence Handbook* § 8.60, at 452 (3d ed. 1993).

However, upon careful examination of the transcript of the evidence, it is clear that this claim of error is unpreserved. R.Cr. 9.22. When the testimony complained of was given, there were no objections. Some such testimony came in during cross-examination and appellant sought no relief for lack of witness responsiveness. On one occasion, there was a colloquy between the court and counsel in which the prosecutor stated that the "counselor is being offered to establish the veracity of [J.V.'s] statement, that she made to him, regarding the source of her difficulties." Defense counsel properly argued "He cannot—that is a comment on somebody's truthfulness. It is specifically excluded under *Alexander* and *Hall.*"

While the foregoing suggests an objection to witness comment on the victim's credibility, the trial court understood the objection to be otherwise and ruled that specific victim statements were admissible based on the treating physician exception to the hearsay rule, KRE 803(4). Moreover, the objection came well after most of the offensive testimony had been given. There were no other objections concerning expert opinion as to credibility and none at all were contemporaneous with the occurrence of the testimony. *West v. Commonwealth*, Ky., 780 S.W.2d 600 (1989).

While the absence of a contemporaneous objection is clear, I do not believe the provisions of R.Cr. 10.26 should be invoked and relief granted on grounds of manifest injustice. While we should not retreat from our decisions which forbid expert witness comment on credibility, not every such violation amounts to substantial error. Only upon a determination that manifest injustice has resulted from the error should relief be granted. The evidence against appellant was highly persuasive. In such circumstances, there was no manifest injustice. *Schambon v. Commonwealth*, Ky., 821 S.W.2d 804 (1991); *Jackson v. Commonwealth*, Ky.App., 717 S.W.2d 511 (1986); *Humphrey v. Commonwealth*, Ky., 836 S.W.2d 865 (1992).

Appellant has also claimed error in the testimony of Dr. Larry Nunemaker, an obstetrician/gynecologist who examined J.V. for the purpose of giving testimony as to his physical findings. This physician testified extensively about the physical examination he performed, the manner in which the examination was conducted, and his findings. He did not repeat any history given by J.V. or others. At the end of a long narrative answer concerning his physical findings and not responsive to a question, Dr. Nunemaker added, "and those findings were compatible with [J.V.'s] history that she had given me." Appellant's objection was overruled. Thereafter the doctor was asked whether his findings were compatible with someone inserting a finger into the child's vagina and appellant's objection to this was also overruled. While the answer given was ambivalent, it was essentially affirmative.

Prior to Dr. Nunemaker's testimony, J.V. had testified for the Commonwealth. She was ten years old at the time of trial and related detailed accounts of appellant's sexual abuse of her. In *Brown v. Commonwealth*, Ky., 812 S.W.2d 502 (1991), and *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856 (1993), this Court reversed convictions for, *inter alia*, the occurrence of error not dissimilar to Dr. Nunemaker's testimony that his findings on examination were consistent with J.V.'s history. We reasoned that where patient history is irrelevant to the physical examination and the examining physician has no treatment responsibility, repetition of history or statement that physical findings are consistent with history is the equivalent of a physician's opinion that the charges are correct.

Despite suggested distinctions between this case and *Brown* and *Alexander*, and with due regard for *Turner v. Commonwealth*, Ky., 914 S.W.2d 343 (1996), it is impossible to harmonize the unresponsive summary statement given by Dr. Nunemaker with our decisions. The objection should have been sustained and the jury should have been admonished to disregard the statement. At this juncture, however, the

Court's only options are to reverse for a new trial or to affirm on grounds of harmless error. R.Cr. 9.24 commands the disregard of error or defects in the proceedings which do not affect the substantial rights of the parties. Our highly regarded decision in *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969), directs consideration of the weight of the evidence in the assessment of whether error is harmless or prejudicial. In this case, the Nunemaker error consisted of a brief unresponsive statement that his physical findings were compatible with the child victim's history, and while this amounted to improper corroboration, in view of the weight of evidence against appellant, it was benign. The error was insufficient to justify reversal of the case.

Appellant has argued that the trial court erroneously prevented an important witness from testifying on his behalf. He argues that the testimony of Terence Campbell who holds a Ph.D. in clinical psychology should have been admitted at trial. Presented by avowal, Dr. Campbell's testimony concerned the suggestibility of children, proper procedures in interviewing children and the appropriate standard of practice in child sexual abuse cases. Consistent with our decision in *Newkirk v. Commonwealth*, Ky., 937 S.W.2d 690 (1996), the trial court excluded the testimony on relevancy grounds terming it "purely speculative" since Dr. Campbell had never interviewed or examined J.V. or any of the children involved in the case. The court also held that the testimony invaded the province of the jury as improper opinion evidence.

On appeal, the standard of review of a ruling denying admissibility of evidence under KRE 702, which governs expert opinion evidence, is whether "the trial judge abused his or her discretion." *Mitchell v. Commonwealth*, Ky., 908 S.W.2d 100, 102 (1995). The proffered testimony of Dr. Campbell consists precisely of the profile generalities we have prohibited the Commonwealth from introducing in the long line of cases culminating in *Newkirk v. Commonwealth, supra.* Without interviewing the children himself, Dr. Campbell implied that, due to the extreme sugges-

tibility of children and certain non-standard practices in the investigation of abuse, the child witnesses' testimony was not reliable.

There is no meaningful distinction between this testimony and that which was excluded in *Newkirk* and other cases as evidence of "child sexual abuse accommodation syndrome" or some facet thereof. This case well illustrates the mischief of such testimony and shows that allowing opinion testimony of this nature invites a war between "experts" which will serve only to confuse the jury and diminish its historic role of assessing witness credibility. The trial court properly excluded this testimony.

This issue also confirms this Court's wisdom when it refused to adopt Rule 704 of the Federal Rules of Evidence, a rule which allows expert opinion testimony upon ultimate issues of fact. Sadly, and despite its protest to the contrary, the majority in this case has amended the Rules of Evidence by adoption of Rule 704, contrary to the express provisions of KRE 1102 and 1103. KRE 1102(c) provides: "Neither the Supreme Court nor the General Assembly should undertake to amend or add to the Kentucky Rules of Evidence . . ."

While the trial court properly excluded Dr. Campbell's proffered testimony in this case, when such testimony is offered in the next case, the majority opinion may result in its admission.

As set forth hereinabove, I concur in result only.

STEPHENS, C.J., joins this opinion concurring in result only.

STUMBO, Justice, dissenting.

### PART I

I cannot agree with the view of the majority that the admission of the testimony of Mr. William House and Dr. Larry Nunemaker was proper. I would hold that such was so prejudicial as to be reversible. Over the last ten years we have repeatedly prohibited this sort of evidence, and, though the issues may not be completely preserved, Appellant's objection to House's testimony vouching for the victim's veracity was made at a time when the error could have been dealt with.

During the Commonwealth's direct examination at trial, House described his function as determining "why the individual—and, in this case, a child—is there, what has happened, and, how to help that situation." In J.V.'s case, he worried initially that the child might have been "coached." After interviewing J.V., however, House told the jury that he found J.V.'s answers to be "consistent" and supported by "internal logic." When asked by the Commonwealth if J.V.'s responses to his questions "alleviated" his concerns about her being coached, House replied "Yes, it did." House's direct testimony ended with his assertion that "I felt that I trusted [J.V.]—or the veracity of the statements and so forth." Appellant argues that, in vouching for J.V.'s credibility, House improperly invaded the province of the jury, and that the testimony should not have been admitted.

Clearly, House's testimony regarding J.V.'s credibility, offered as opinion evidence, is improper. In essence, J.V. told House and the jury that Appellant sexually abused her; House then told the jury that they should believe J.V. This Court has often been suspicious of testimony that "remove[s] the jury from its historic function of assessing credibility." *Newkirk v. Commonwealth,* Ky., 937 S.W.2d 690, 696 (1996). Indeed, several of our decisions specifically condemn the use of expert testimony to bolster the credibility of children who are allegedly the victims of sexual abuse. *See, e.g., Newkirk, supra; Hall v. Commonwealth,* Ky., 862 S.W.2d 321 (1993); *Hellstrom v. Commonwealth,* Ky., 825 S.W.2d 612 (1992). So it is with the instant case. As we have noted,

> "Psychologists and psychiatrists are not . . . experts at discerning the truth. Psychiatrists are trained to accept facts provided by their patients, not to act as judges of patients' credibility."

This same legal reasoning applies with much greater force to the testimony of a social worker, however well qualified.

*Hellstrom,* 825 S.W.2d at 614 (citation omitted).

Here, the prosecution explicitly characterized House's role at trial as "establishing the veracity of [J.V.]'s statement." Whether formally adjudged an expert or not, the Commonwealth's representations below make it clear that House's testimony had but one purpose: to bolster the credibility of J.V. That testimony was clearly inadmissible.

In a similar argument, Appellant charges that the trial court erred in allowing Dr. Nunemaker, a physician, to testify about his examination of J.V. Dr. Nunemaker testified extensively about the exam and the procedures involved, then characterized his findings as "consistent with [J.V.]'s history that she had given me" and compatible with someone inserting a finger into J.V.'s vagina.

At the Commonwealth's behest, Dr. Nunemaker did exactly what this Court prohibited in *Brown v. Commonwealth,* Ky., 812 S.W.2d 502 (1991) and *Alexander v. Commonwealth,* Ky., 862 S.W.2d 856 (1993). After receiving from J.V. a history of sexual abuse by Appellant, he testified that his physical findings were consistent with that history. As we said in *Brown,* "[t]he inference, of course, is that the injury is consistent with the offense charged...." *Brown,* 812 S.W.2d at 504. Because of the limited probative value of the testimony and its extremely prejudicial impact, I would reverse on this issue as well.

### PART II

I must address what is ultimately the most distressing aspect of the majority opinion: the opinion undertakes to wipe the slate clean of at least a decade of decisional law on point. The opinion states: "[t]he 'ultimate issue' rule reflects a distrust of the jury's ability to separate the wheat from the chaff and, in that respect, is an anachronism." Despite such a statement, it acknowledges that in 1992 this Court specifically refused to adopt FRE 704 and thereby retained the prohibition upon ultimate issue opinion testimony.[1] Was our view an anachronism in 1992? Just last year we noted our rejection of FRE 704 in *Newkirk v. Commonwealth,* 937 S.W.2d at 694, when we said:

It has been suggested that our "ultimate fact" decisions are inconsistent. (Citations omitted). However, there is no ambiguity in our decision to eliminate the proposed Rule 704 from the Kentucky Rules of Evidence.

. . . .

While there may be inconsistencies in our decisions on ultimate fact opinion testimony, where the determination of credibility is synonymous with the ultimate fact of guilt or innocence, expert opinion is inadmissible. An expert witness may not testify that a defendant is guilty. When, as in this case, an expression of opinion as to credibility is the equivalent of an opinion as to guilt of innocence, it is of no consequence that the testimony was presented in a general manner rather than as specific to the case or on rebuttal rather than as evidence in chief.

The majority opinion herein proclaims "[w]e now once again depart from the 'ultimate issue' rule and rejoin the majority view on this issue" and states that "[o]ur departure from the 'ultimate issue' rule does not contravene KRE 1102 and 1103...." We do more here than simply interpret KRE 401 and KRE 702. As the *Newkirk* opinion observes, there was no inadvertence in our failure to adopt FRE 704; it was deliberately rejected and after thorough consideration. In direct violation of KRE 1102, the majority's opinion does precisely what this Court refused to do when we rejected proposed KRE 704. While it is correct that the adoption of the Rules of Evidence left a number of other issues open, this is one that we have written on extensively and comprehensively, writings which we now reject.

---

**1.** Rule 704(a) of the Federal Rules of Evidence (which we refused to adopt) states, in pertinent part: "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

While the majority opinion is unambiguous in its condemnation of *Brown v. Commonwealth*, Ky., 812 S.W.2d 502 (1991), and *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856 (1993), numerous other decisions are cited without their fate being expressly spelled out. Logically, it seems that those opinions, which restrict expert testimony on ultimate facts or ultimate issues, will be necessarily overruled and expert witnesses will now be unrestricted in their right to tell the jury what the evidence means. If that is the intended result sought by the majority, it should be clearly and unambiguously stated.

When this appeal first reached this Court, it appeared to be a simple reargument of issues that had been long settled. In the course of resolving this case we have undone important decisional law that protected a basic right in this Commonwealth: the right to have a jury, not an expert witness, determine the credibility of those who testify against you.

LAMBERT, J., joins in Part II of this dissenting opinion.