WERNER ENTERPRISES, INC. and
Michael H. Whobrey, Appellants.

v.

NORTHLAND INSURANCE COMPA-
NY; Bashkim Selaci, Individually;
Bashkim Selaci, Father and Next
Friend of L.S., a Minor; Translink
Trucking, LLC; and Ray Jones Truck-
ing, Inc., Appellees.

No. 2012–CA–001906–MR.

Court of Appeals of Kentucky.

July 11, 2014.

Gene F. Zipperle, Jr., Louisville, KY, for appellants.

Nicholas R. Hart, Louisville, KY, for appellee Northland Insurance Company.

Danny E. Glass, Evansville, IN, for appellee Ray Jones Trucking, Inc.

Lawrence I. Young, Louisville, KY, for appellee Bashkim Selaci.

Before ACREE, Chief Judge; JONES and VANMETER, Judges.

## OPINION

VANMETER, Judge:

Defendants/third-party plaintiffs Werner Enterprises, Inc. ("Werner") and Michael Whobrey appeal from the Webster Circuit Court's final judgment, based on a jury verdict, entered in favor of plaintiffs Northland Insurance Company ("Northland"); Bashkim Selaci, individually; Bashkim Selaci, as father and next friend of L.S., a minor; and third-party defendants Translink Trucking, LLC and Ray Jones Trucking, Inc. The jury found Werner and Whobrey liable for causing a three-vehicle collision. For the following reasons, we affirm.

On a clear, sunny morning in August 2008, three tractor-trailers collided on Pennyrile Parkway in Webster County, Kentucky. All three vehicles were traveling in the right-hand lane when three coal trucks passed them in the left-hand lane. When the coal trucks moved back into the right-hand lane after passing, they hit a bump in the road. Thereafter, a cloud of dust kicked up into the air, impairing the visibility of the operators of the three vehicles.

Bashkim Selaci was operating the first vehicle in line, which was owned by Translink Trucking. Selaci's son, L.S., was traveling with him. Northland insured the Translink Trucking vehicle. Whobrey was operating the second vehicle in line, owned by Werner. Norman Camp operated the third and last vehicle in line. Ray Jones Trucking allegedly owned the three coal trucks. The coal trucks did not collide with each other or with any of the three vehicles, and were not present at the scene of the accident after the collision.

As a result of the collision, Northland filed a subrogation action against Werner and Whobrey for damages to Selaci's vehicle. Werner and Whobrey filed an action against Selaci and Translink Trucking for damages to its vehicle. Selaci and L.S. filed a personal injury action against Werner and Whobrey, who then filed a third-party complaint against Ray Jones Trucking. Northland filed an amended complaint against Ray Jones Trucking as well.

At trial, Selaci, Whobrey, Robert "Ray" Jones (vice-president of Ray Jones Trucking) and Trooper Nicholas Rice (who investigated the accident) testified. Camp's deposition testimony was read to the jury. Selaci testified that on the day in question, his vehicle was traveling at 65 m.p.h. in a 70 m.p.h. posted speed zone when the three coal trucks passed him. Selaci was unable to identify the particular type of coal truck, or whether it belonged to Ray Jones Trucking. When the dust cloud appeared, Selaci slowed down right away, turned on his hazard lights, and tried to move his vehicle to the emergency lane, or shoulder, of the road. Selaci testified that he had zero visibility in the dust cloud and that his actions were that which a professional truck driver would have taken in that situation. Selaci stated he did not believe driving through an area with no visibility was appropriate. As Selaci was moving to the emergency lane, Whobrey hit Selaci's vehicle from behind. Camp then collided with Whobrey's vehicle.

After the accident, Selaci, L.S., and Whobrey rode together in an ambulance to the hospital. Selaci testified that while in the ambulance, Whobrey apologized to him and said he did not see Selaci's vehicle and thought he could clear the dust cloud. Whobrey denied having this conversation.

Whobrey testified that his vehicle was traveling in the right-hand lane behind Selaci's vehicle and in front of Camp's vehicle. Whobrey was operating his vehicle at 65 m.p.h. Right before the collision, Whobrey's vehicle was approximately 110 feet behind Selaci's vehicle. Whobrey testified that he tried to drive through the dust cloud at a speed of about 50–55 m.p.h. and he thought Selaci would try and clear it too. Whobrey stated he did not see Selaci's brake signal or hazard lights and did not realize how thick the dust cloud was until he was in it. He described the dust cloud as if someone had thrown a blanket over his front windshield.

Whobrey further testified that Selaci's actions of slowing down, activating his hazard lights, and trying to pull over to the emergency lane were all appropriate actions. However, Whobrey did not anticipate Selaci would stop in the middle of the road, which was where Whobrey hit him. Whobrey reviewed a photo of a Ray Jones truck and positively identified it as one of the coal trucks that had passed him.

Trooper Rice responded to the dispatch call about the accident, investigated the accident, and took statements from all three drivers. Trooper Rice's qualifications include completion of forty hours of accident investigation training at the Kentucky State Police Academy and completion of six weeks of accident reconstruction training at the Department of Criminal Justice in Richmond, Kentucky. Trooper Rice did not observe the collision but rather arrived on the scene about twenty minutes after the collision occurred.

Trooper Rice stated that none of the three drivers mentioned the name Ray Jones Trucking and had they mentioned it, he would have included it in the police report. He testified that Selaci told him that when he entered the dust cloud, he slowed down, activated his vehicle's hazard lights, and tried to pull over to the emergency lane of the road. Trooper Rice did not recall, nor did the police report reflect, either Whobrey or Camp stating that they slowed down and/or activated their vehicle's hazard lights. Trooper Rice testified that all three drivers' stories were pretty consistent to the extent that several coal trucks had passed them, after which a dust cloud appeared and impaired the drivers' visibility.

None of the drivers complained of improper distance between vehicles or speeding. Trooper Rice did not take any measurements or make any calculations with respect to the vehicles' speed or stopping distance. Over the objection of counsel, Trooper Rice identified Whobrey and Camp's "following too close and inattention" as human factors involved in the collision. Trooper Rice clarified that the human factors he identified were based on the conditions he observed upon arriving at the scene and the lineup of the vehicles.

Ray Jones testified that he was unaware of any of his drivers reporting an accident on the day in question. He described Ray Jones's trucks as being painted white with a black stripe on the cab. Jones also testified to the routine maintenance inspections performed on Ray Jones's trucks.

Camp's deposition testimony confirmed that his vehicle was traveling behind Whobrey's vehicle, which was following Selaci's vehicle. Camp testified that when the three coal trucks passed, they hit a bump in the road and a dust cloud kicked up, which impaired Camp's visibility to the

point he could not see anything past the dust cloud. Camp testified Whobrey braked when entering the dust cloud and Camp slowed his vehicle's speed to about 50 m.p.h. When Whobrey's vehicle entered the dust cloud, Camp could no longer see his vehicle or his brake lights and subsequently collided with Whobrey's vehicle. When shown a picture of a Ray Jones truck and asked whether it looked like the coal trucks that had passed him, Camp stated he was positive the trucks that had passed him were painted white, but could not confirm that the trucks had a black stripe painted across them.

During closing arguments, counsel for both Selaci and Ray Jones Trucking stressed Trooper Rice's testimony attributing fault to Whobrey and argued that the collision occurred because of Whobrey's excessive speed and inattention. Ultimately, the jury returned a verdict against Werner and Whobrey and in favor of Selaci and Northland. Ray Jones Trucking received a defense verdict. Werner and Whobrey now appeal.[1]

On appeal, Werner presents two claims of error: (1) the trial court abused its discretion by allowing Trooper Rice to testify about human factors involved in the collision and (2) the trial court erred by denying Werner's motions for a directed verdict, with respect to Northland, Selaci, and Ray Jones Trucking. We disagree with both claims of error.

▮▮▮ An appellate court reviews a trial court's evidentiary rulings for an abuse of discretion, i.e., " 'whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.' " Barnett v. Commonwealth, 317 S.W.3d 49, 61 (Ky.2010) (citation omitted).

"A trial court's ruling on the admission of expert testimony is reviewed under the same standard as a trial court's ruling on any other evidentiary matter." Goodyear Tire & Rubber Co. v. Thompson, 11 S.W.3d 575, 578 (Ky.2000). In determining the admissibility of expert witness testimony under KRE[2] 702, a trial court is charged with performing a "gatekeeping function," which requires the court "to determine whether the expert is proposing to testify to scientific, technical or other specialized knowledge that will assist the trier of fact to understand or determine a fact in issue." Toyota Motor Corp. v. Gregory, 136 S.W.3d 35, 39 (Ky.2004). In performing its gatekeeping function, the trial court retains a considerable breadth of discretion and "a reviewing court must 'give great deference to the trial court's ruling and reverse only in circumstances of clear abuse.' " Id. (citation omitted).

In addressing Werner's first claim of error, we will treat Trooper Rice's testimony as expert testimony for the following reasons. First, the record is unclear whether Werner preserved the right to challenge Trooper Rice's qualifications as an expert. During the bench conference held to address Werner's objection to Trooper Rice's testimony regarding human factors, counsel argued for the first time that an insufficient foundation had been laid to allow Trooper Rice to render an expert opinion. This argument was made *after* Trooper Rice had already testified, without objection, to his qualifications as a trained accident reconstructionist and to numerous details and observations relating to his investigation of the accident. Further, Werner does not dispute Trooper Rice's qualifications as an expert in its appellate brief; it only challenges his qual-

---

1. For convenience, we will hereinafter refer to Werner and Whobrey collectively as "Werner."

2. Kentucky Rules of Evidence.

ifications in its reply brief, in response to the appellees' arguments in their brief. Thus, we believe the trial court properly exercised its discretion in treating Trooper Rice's testimony as expert testimony and we will do the same.

▇▇▇ Werner argues Trooper Rice should not have been permitted to testify about human factors involved in the collision—Whobrey following too closely and inattention—since that testimony amounts to an opinion on the "ultimate issue" of the case, i.e., fault, and improperly invaded the province of the jury.[3] Werner maintains that given the blinding dust cloud, Trooper Rice's testimony about human factors involved had the effect of nullifying the jury instruction on "sudden emergency" because had a true sudden emergency occurred, Trooper Rice would have had no reason to attribute fault to any driver. Werner further claims that Trooper Rice's testimony regarding human factors was clearly prejudicial since both counsel for Selaci and Ray Jones Trucking emphasized this testimony in their closing arguments.

The trial court overruled Werner's objection and allowed Trooper Rice to testify about the human factors he identified, but not about his opinion as to ultimate fault. The trial court held that any objections went to Trooper Rice's credibility and the weight of the evidence. Trooper Rice was then asked his basis for identifying the human factors involved, which he clarified as the conditions he saw at the scene of the accident and the lineup of the vehicles, rather than any measurements he took or calculations he made.

The Kentucky Supreme Court has abandoned the "ultimate issue" rule for expert testimony, Stringer v. Commonwealth, 956 S.W.2d 883 (Ky.1997). The court in Stringer held that KRE 702 codified a common sense approach to the admissibility of expert testimony, that is, " 'to receive the opinion testimony where it appears that the trier of fact would be assisted rather than impeded in the solution of the ultimate problem.' " Id. at 891 (citation omitted). Thus, the relevant question in the present case is whether Trooper Rice's testimony concerning human factors involved was more likely to assist the jury in understanding the circumstances of this case than impede their understanding. Contrary to Werner's assertion on appeal, Trooper Rice did not render an opinion as to negligence, or fault, and therefore his testimony did not invade the province of the jury. Under the holding in Stringer, his expert testimony was more likely to assist the jury than impede their understanding. Accordingly, the trial court did not abuse its discretion by allowing Trooper Rice's testimony.

Werner next argues that the trial court erred by not directing a verdict in its favor with regard to Northland, Selaci, and Ray Jones Trucking. Werner moved for a directed verdict at the close of its case and renewed its motion at the close of all the evidence. The trial court denied its motion on grounds that the reasonableness of the parties' conduct was a question of fact for the jury.

▇▇▇ Upon consideration of a motion for a directed verdict,

---

**3.** Ray Jones Trucking argues on appeal that Werner waived its right to challenge Trooper Rice's testimony on "ultimate issue" grounds since the only basis for its objection at trial to Trooper Rice's testimony was hearsay. We disagree. While Werner's initial objection was based on hearsay, during the bench conference that followed, Werner elaborated and specifically objected to Trooper Rice testifying as to fault. We find this objection sufficient to preserve the "ultimate issue" argument for our review.

the trial court must draw all fair and reasonable inferences from the evidence in favor of [the non-moving party]. If the evidence is sufficient to induce a reasonable juror to believe ... that the defendant is [liable], a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the [non-moving party] is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find [liability], only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991) (citation omitted); *accord Banks v. Commonwealth*, 313 S.W.3d 567, 570 (Ky.2010).

■ With respect to Northland and Selaci, Werner argues the presence of a sudden emergency—the dust cloud—eliminated the duty of care such that Whobrey's conduct did not result in the breach of any duty toward Selaci, or toward Northland as Selaci's subrogee. In support, Werner cites *Henson v. Klein*, 319 S.W.3d 413 (Ky.2010), a case in which two watercraft collided on Lake Cumberland and the issue was whether a sudden emergency instruction was warranted. Werner quotes the following passage in particular: "[t]he presence of the [sudden] emergency does not *excuse* the breach of a specific duty; under appropriate circumstances, it can *eliminate* the duty so that the conduct ... is not a breach at all." *Id.* at 421. Werner argues the *Henson* holding entitles it to a directed verdict since the presence of the dust cloud eliminated Whobrey's duty of care.

■ As an initial matter, we note that the *Henson* court was not presented with, and did not rule on, whether a directed verdict was warranted. The issue in *Henson* was whether the jury was properly instructed on sudden emergency, not whether the sudden emergency required a directed verdict. The court in *Henson* held that the jury was properly instructed on sudden emergency, the proper criterion for such instruction being " 'whether any of the specific duties set forth in the instruction would be subject to exception by reason of the claimed emergency.' " *Id.* (quoting *Harris v. Thompson*, 497 S.W.2d 422, 428 (Ky.1973)). If an accident occurs under circumstances which implicate only a general duty of ordinary care, no sudden emergency instruction is required. *Henson*, 319 S.W.3d at 421. In the modern world of litigation, however, wherein human conduct is largely governed by statutes and regulations, a negligence claim resting exclusively on the generalized duty of ordinary care is rare. *Id.*

■ "When a statutory duty is supported by evidence, it must be incorporated into a jury instruction as a 'specific duty[,]' " the breach of which is negligence *per se* "if the harm which occurred incident to violation of the statute is that type of harm which the statute was intended to prevent." *Id.* (citation omitted). In other words, "[w]here one's ability to conform to a specific duty is arguably affected by the presence of a sudden and unexpected peril, the jury is not adequately or fairly informed of what the substantive law requires unless the specific duty is qualified with a sudden emergency instruction." *Id.*

In *Henson*, the defendant was charged with the specific duty " '[t]o operate his personal watercraft in a reasonable and prudent manner in accordance with the 'Rules of the Road' so as not to endanger human life, human physical safety, or

property[.]' " *Id.* at 416 (citing KRS[4] 235.285(4)). Given the evidence in that case, the jury was provided with the following qualifying instruction:

> [I]f immediately before the accident [defendant] was suddenly and unexpectedly confronted with an emergency by [plaintiff] turning her personal watercraft into the path of [defendant's] approaching watercraft, and if such emergency was not brought about by any failure on his part to perform the duties above set forth, he was not thereafter required to adopt the best course possible in order to avoid the impending danger but was required to exercise only such care as the jury would expect an ordinarily prudent person to exercise under the same conditions and circumstances.

*Id.* at 416–17. In this context, the *Henson* court held that under appropriate circumstances, the presence of a sudden emergency (the plaintiff abruptly turning her watercraft into defendant's path and decelerating to a stop directly in defendant's path) can eliminate the duty (to operate the watercraft in a reasonable and prudent manner) so that the conduct (defendant's watercraft colliding into plaintiff's watercraft) is not a breach of the specific duty.

█ Here, the jury instructions set forth Whobrey's specific duties with respect to operating the motor vehicle. Thus, the sudden emergency instruction qualifying those specific duties was proper under *Henson.* Werner provides no authority in support of its assertion that the presence of a sudden emergency necessitates a directed verdict. To the contrary, Kentucky law is clear that the determination of whether a party breaches a duty of care, with or without the presence of a sudden emergency, is a question of fact for the jury. *Henson,* 319 S.W.3d at 423. In the case at bar, the jury was properly instructed on the sudden emergency and was charged with deciding whether they believed Whobrey's conduct was a reasonable response to the circumstances. Based on the evidence as a whole, the trial court did not err by denying Werner's motion for a directed verdict against Northland and Selaci.

█ Likewise, the trial court did not err by denying Werner's motion for a directed verdict against Ray Jones Trucking. Werner contends that because Ray Jones's trucks were "positively identified as the source of the dust plume," a reasonable juror would have concluded that Ray Jones's drivers breached their duty of care to operate their vehicles in a careful manner and therefore the trial court should have directed a verdict in Werner's favor.

Yet, the evidence presented at trial was not uncontroverted with regard to any breach of care on behalf of Ray Jones Trucking, nor did it positively establish the presence of Ray Jones's trucks at the scene of the accident. Trooper Rice testified that during his investigation, none of the drivers mentioned the name Ray Jones Trucking and had they mentioned it, he would have included that information in the police report. Additionally, Camp testified that the coal trucks were white, but he could not confirm that the trucks had a black stripe, as Ray Jones's trucks have. Similarly, Selaci could not confirm that the trucks belonged to Ray Jones Trucking. And, evidence was presented that other companies with similar trucks regularly transport coal on the stretch of highway where the accident occurred.

The jury further heard testimony from Jones that he was unaware of his drivers reporting an accident on the day in question and he first became aware of the

4. Kentucky Revised Statutes.

accident when he received the complaint. Jones also testified to the maintenance inspections Ray Jones's trucks routinely undergo, from which the jury could have reasonably concluded that Ray Jones Trucking did not breach any duty of ordinary care. Based on the evidence, the trial court did not err by denying Werner's motion for a directed verdict against Ray Jones Trucking.

The final judgment of the Webster Circuit Court is affirmed.

ALL CONCUR.