RENDERED: OCTOBER 31, 2019
TO BE PUBLISHED

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$

2017-SC-000404-MR

DATE _3/26/20_

HUBERT MCGUIRE      APPELLANT

ON APPEAL FROM HENDERSON CIRCUIT COURT
V.      HONORABLE KAREN LYNN WILSON, JUDGE
NO. 16-CR-00378

COMMONWEALTH OF KENTUCKY      APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**AFFIRMING, IN PART AND REVERSING, IN PART**

A circuit court jury convicted Hubert McGuire of first-degree trafficking in a controlled substance, second-degree fleeing and evading police, tampering with physical evidence, resisting arrest, and of being a first-degree persistent felony offender, and the trial court sentenced him to a total of twenty years' imprisonment.

McGuire now appeals the resulting judgment to this Court as a matter of right[1] alleging three errors: (1) the trial court abused its discretion by allowing certain testimony; (2) the trial court erred in denying McGuire's motion for a directed verdict of acquittal on the first-degree trafficking charge, and (3) the

---

[1] Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of . . . imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

trial court erred in denying McGuire's motion for a directed verdict on the tampering with physical evidence charge. We affirm in part, reverse in part, and remand to the trial court for entry of a new judgment consistent with this opinion.

## I. BACKGROUND.

When Officer Jake Isonhood spotted Hubert McGuire standing on the street corner, he knew there was an outstanding arrest warrant for McGuire. Isonhood detained and attempted to arrest McGuire; but McGuire took off running, and a chase began. Isonhood caught up to McGuire and took him down, as McGuire continued to resist. In the struggle, Isonhood saw McGuire reach for an unidentified item in his waistband, so Isonhood deployed his taser. But the taser was ineffective. Isonhood took off running again, and the chase continued. While Isonhood was running behind McGuire, Isonhood saw McGuire throw his arm out away from the right side of his body. Isonhood deployed his taser a second time and was able to arrest McGuire.

During the search of McGuire's person, Isonhood found eight unused small plastic baggies and money in small denominations. After subduing McGuire, Isonhood retraced the route of the foot chase to the place where he had seen McGuire throwing his arm away from McGuire's right side. At that spot, he found two more baggies: one containing 2.623 grams of methamphetamine and one containing marijuana. Isonhood later testified that the baggies were lying on the ground less than ten feet to the right of McGuire's flight path and their location was consistent with being thrown in the direction he saw McGuire's hand moving.

At trial, Isonhood testified that, based on his experience, the small plastic bags like those found on McGuire were commonly used to hold drugs, the quantity of methamphetamine found on McGuire was inconsistent with personal use, and that customarily people in possession of methamphetamine for personal use are found with only one small plastic bag and some tool for ingesting the drug—such as a needle or spoon—but McGuire was found with multiple bags and tools for ingesting the drug.

The jury convicted McGuire of first-degree trafficking in a controlled substance, second-degree fleeing and evading police, tampering with physical evidence, resisting arrest, and of being a first-degree persistent felony offender. The jury fixed McGuire's sentence for the trafficking conviction at 10 years' imprisonment, enhanced as a first-degree persistent felony offender to 15 years and the sentence for tampering with physical evidence at five years' imprisonment, enhanced as a first-degree persistent felony offender to 10 years. And the jury recommended these sentences to run consecutively. The jury fixed the punishment for the two misdemeanor convictions, second-degree fleeing or evading the police and resisting arrest, at 12-months each, which, by law, run concurrently.

At sentencing, the trial court imposed the sentences recommended by the jury for all convictions except for the trafficking conviction. The trial court imposed an enhanced sentence of ten years' imprisonment for trafficking in a controlled substance as a first-degree persistent felony offender.

## II. ANALYSIS.

### 1. The trial court did not err in admitting Officer Isonhood's testimony regarding the physical evidence.

McGuire first argues that the trial court erred in allowing certain parts of Officer Isonhood's testimony because it expressed his opinion on the ultimate issue of whether McGuire was guilty of trafficking in a controlled substance. At trial, Officer Isonhood testified that, based on his experience, the small plastic bags found on McGuire's person are commonly used to carry drugs, the quantity of methamphetamine recovered after the arrest was inconsistent with personal use, and that persons in possession of methamphetamine for personal use typically only possess one small baggie and are also found with some means of administering the drug.

McGuire's counsel failed to object to this testimony at trial, so we review for palpable error under RCr[2] 10.26. Palpable-error review allows reversal when "manifest injustice has resulted from the error."[3] Such an injustice occurs when there is a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law."[4] "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process."[5]

---

[2] Kentucky Rule of Criminal Procedure.

[3] *Elery v. Commonwealth*, 68 S.W.3d 78, 98 (Ky. 2012) (quoting RCr 10.26).

[4] *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

[5] *Id.* at 5.

4

Specifically, McGuire argues that Isonhood's testimony "invaded the jury's responsibility" because it amounted to an opinion on the ultimate issue of whether McGuire was guilty of trafficking in a controlled substance in violation of *Stringer v. Commonwealth*.[6] McGuire alleges this error amounts to a violation of his right to "a fair trial, fundamental fairness and due process under the Fifth and Fourteenth Amendments to the United States Constitution and §§ 2, 7, 11, and 14" of the Kentucky Constitution. We disagree and find the admission of this testimony to be consistent with the rule announced in *Stringer*.

In *Stringer*, the defendant was convicted of first-degree sodomy and first-degree sexual abuse.[7] A medical expert at trial testified that his examination of the victim "revealed some hypertrophy and tearing in the vaginal area as well as some stretching and partial destruction of the hymen," and that "those findings were compatible with [the victim's] history that she had given [the medical expert]" and with "something being inserted in there, and, trying to stretch it."[8]

In holding that the testimony was admissible, we explained that the testimony was not an "opinion as to the ultimate issue"—whether the defendant was guilty or innocent—but was instead only a relevant evidentiary fact tending to make the ultimate fact of guilt more or less probable.[9] We specifically noted that, "[i]f [the witness] had testified that he believed [the

---

[6] 956 S.W.2d 883 (Ky. 1997).

[7] 956 S.W.2d at 885.

[8] *Id.* at 889.

[9] *Id.* at 891–92.

5

defendant] to be guilty, such would have been an opinion as to the ultimate issue. However, an opinion that a result is consistent with a factual scenario is not an opinion that the scenario occurred."[10]

Similarly, in *Kroth v. Commonwealth*,[11] we held that the trial court did not err in allowing an officer "to testify that in his opinion the defendant had the pills in his possession for sale and not for personal use."[12] The officer, testifying as an expert, referred to the large quantity of drugs found in the defendant's home and "stated that such a large quantity indicated that they were for sale, not personal use, based on his ten years of experience as a narcotics officer."[13] And later in *Sargent v. Commonwealth*,[14] we permitted the testimony of police officers, acting as experts, to express their opinion that the large quantity of marijuana and unique packaging led them to believe it was possessed for sale rather than for personal use.[15]

Like the witnesses in *Kroth* and *Sargent*, Officer Isonhood offered his opinion that, based on his experience as a patrol officer, the evidence recovered was consistent with trafficking and not personal use. He did not testify that he believed McGuire to be guilty or not guilty. "This type of expert opinion has

---

[10] *Id.* at 889.

[11] 737 S.W.2d 680 (Ky. 1987).

[12] *Id.* at 681.

[13] *Id.*

[14] 813 S.W.2d 801 (Ky. 1991).

[15] *Id.* at 803.

been almost routinely admitted in drug cases."[16] Accordingly, Isonhood's

testimony was not inadmissible as an opinion on the ultimate issue of guilt. [17]

In the alternative, McGuire argues that Isonhood's testimony was

inadmissible because Isonhood was not testifying as a qualified expert witness.

McGuire argues Isonhood's opinion that the evidence found on McGuire's

person was not consistent with personal use was outside the common

knowledge of jurors and, therefore, without being qualified as an expert witness

under KRE[18] 702, Isonhood could not testify to it.[19]

KRE 701(c) prohibits a lay witness from testifying on subjects "[n]ot

based on scientific, technical, or other specialized knowledge within the scope

of Rule 702." Whether a certain quantity of methamphetamine is consistent

with personal use, whether a certain type of bag is generally used to carry

drugs, and whether the items found on a person are indicative of personal drug

use are all subjects outside the scope of lay witness testimony. Isonhood could

not have testified to these opinions unless he was a qualified expert witness.

---

[16] *Ordway v. Commonwealth*, 391 S.W.3d 762, 777 n.6 (Ky. 2013).

[17] We note that this testimony is unlike that in *Nugent v. Commonwealth*, 639 S.W.2d 761, 764 (Ky. 1982), to which McGuire cites. In that case, a witness for the Commonwealth read aloud his response to an interviewing officer's question as to whether the defendant had "dropped the hammer" on the murder victim: "I think he did, you know if you want the honest to God truth." *Id.* at 764. We determined this statement was inadmissible because it was an expression of the witness's opinion as to the defendant's guilt. *Id.*

[18] Kentucky Rule of Evidence.

[19] We note that McGuire makes this argument only in his Reply Brief and only as a means of distinguishing *Stringer*, *Kroth*, and *Sargent* from the facts of this case. Nevertheless, we treat this as a separate argument from the "ultimate issue" issue and respond to it. Generally, however, we do not address new issues raised in Reply Briefs that are essential to the success of the appeal. *See Smith v. Commonwealth*, 366 S.W.3d 399, 402 (Ky. 2012) (quoting *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979)) ("[T]he reply brief is not a device for raising new issues which are essential to the success of the appeal.").

7

But we defer largely to the trial court's discretion in determining how to qualify a witness for expert testimony. We have previously explained that KRE 701 was "specifically intended to combat the possibility of counsel avoiding the reliability standards set out in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 [] (1993), 'by the simple process of offering scientific, technical, or other specialized knowledge' evidence through a witness that an attorney sought to identify as a lay witness.'"[20] In order to satisfy *Daubert*, as codified in KRE 702, a witness must be qualified by 'knowledge, skill, experience, training, or education.'"[21] And "[t]he decision to qualify a witness as an expert rests in the sound discretion of the trial court."[22] In making that decision, "a trial court has wide latitude in deciding *how* to test an expert's reliability and in deciding whether or when special briefing or other proceedings, *i.e.*, at a *Daubert* hearing, is needed to investigate reliability, "[23] and "formal *Daubert* hearings are not always required."[24]

The Commonwealth did not attempt to avoid the reliability standards of *Daubert*. Isonhood's testimony indicates that his opinion was based on his many years' experience as a police officer encountering individuals in possession of drugs. He testified that he had been a patrol officer for over five years and that, during that time, he had dealt with other individuals who were

---

[20] *McDaniel v. Commonwealth*, 415 S.W.3d 643, 654 (Ky. 2013) (citing KRE 701 Evidence Rules Commission Notes (2007)).

[21] *Id.* at 654.

[22] *Kemper v. Gordon*, 272 S.W.3d 146, 154 (Ky. 2008) (citing *Owensboro Mercy Health System v. Payne*, 24 S.W.3d 675, 677 (Ky. App. 1999)).

[23] *Dixon v. Commonwealth*, 149 S.W.3d 426, 430 (Ky. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

[24] *Id.* at 430.

in possession of controlled substances. Based upon this background, we cannot say that that the trial court's failure formally to qualify Isonhood as an expert witness before allowing him to offer the testimony at issue created a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law."[25]

## 2. The trial court did not err in denying McGuire's motion for a directed verdict on the charge of trafficking in a controlled substance.

McGuire next alleges that the trial court erred in denying his motion for a directed verdict on the count of trafficking in a controlled substance. This issue was properly preserved for our review.

When reviewing a trial court's ruling on a motion for a directed verdict, we turn to the standard outlined in *Commonwealth v. Benham*:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.[26]

On appellate review, we must determine whether, given the evidence as a whole, "it would be clearly unreasonable for a jury to find guilt[.]"[27] Only then is a defendant entitled to a directed verdict of acquittal.[28] Further, the

---

[25] *Martin v. Comm.*, 207 S.W.3d 1,3 (Ky 2006).

[26] 816 S.W.2d 186, 187 (Ky. 1991).

[27] *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983)).

[28] *Id.* (citing *Sawhill*, 660 S.W.2d at 5).

Commonwealth need only produce more than a "mere scintilla" of evidence to defeat a defendant's motion for a directed verdict.[29]

Further, the Commonwealth may prove its case through either direct or circumstantial evidence,[30] and a jury may make reasonable inferences from circumstantial evidence.[31] While circumstantial evidence must "do more than point the finger of suspicion,"[32] a conviction can be premised on such evidence if, taking the evidence as a whole, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt.[33]

Under KRS[34] 218A.1412(1), "[a] person is guilty of trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in: . . . [t]wo grams or more of methamphetamine." KRS 218A.010(55) defines "traffic" in regard to trafficking in the first degree as "to manufacture distribute, *or possess with intent to manufacture, distribute, dispense, or sell a controlled substance.*"[35]

McGuire argues the Commonwealth failed to present sufficient evidence to show that McGuire was in possession of the methamphetamine, a necessary element of the trafficking statute quoted above. Specifically, McGuire alleges

---

[29] *Sawhill*, 660 S.W.2d at 5.

[30] *Commonwealth v. Goss*, 428 S.W.3d 619, 625 (Ky. 2014) (citing *Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky. 2012)) ("It has long been the law that the Commonwealth can prove all the elements of a crime by circumstantial evidence.").

[31] *Dillingham v. Commonwealth*, 995 S.W.2d 377, 380 (Ky. 1999) (citing *Blades v. Commonwealth*, 957 S.W.2d 246, 250 (Ky. 1997)).

[32] *Davis v. Commonwealth*, 795 S.W.2d 942, 945 (Ky. 1990).

[33] *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000).

[34] Kentucky Revised Statute.

[35] (emphasis added).

10

that the Commonwealth presented less than a mere scintilla of evidence because the only evidence put forth at trial was Isonhood's testimony that he observed McGuire's arm moving away from his body as he fled, that he did not see an object leave McGuire's hand, and that Isonhood returned to the area where he saw McGuire's arm moving and recovered the bag of methamphetamine. McGuire argues that his arm could have been moving because he was trying to remove the taser wires from his body and that a conviction based only on this evidence amounts to speculation, suspicion, or conjecture. Thus, McGuire argues, this error amounts to a violation of his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and §§ 2 and 11 of the Kentucky Constitution.

We disagree. As we noted in a companion case, *Commonwealth v. James*, to prove actual possession sufficient to survive a motion for a directed verdict, "it is not necessary that the Commonwealth present evidence specifically identifying a particular item being dropped by the defendant as the illegal contraband if there is adequate circumstantial evidence linking the defendant to that contraband."[36] In that case, we upheld the trial court's denial of a motion for a directed verdict on a drug possession charge where an officer testified that he observed the defendant, while walking away from the officer attempting to stop him, drop several items to the ground.[37] The officer arrested the defendant and recovered a glass pipe containing methamphetamine on the

---

[36] *Commonwealth v. James*, 2017-SC-000576, 2018-SC-000066, 1, 20 (Ky. Aug. 29, 2019). *James* is not consolidated with this case, but the issues are similar, and the cases were considered by this Court at the same time.

[37] 2017-SC-000576, 2018-SC-000066, at *2, *9–*10.

11

ground in the area where he observed the defendant dropping items.[38] We found this circumstantial evidence sufficient for a jury reasonably to conclude that the defendant was in actual possession of the glass pipe, but merely dropped it as the officer approached.[39]

Similarly, evidence showing that McGuire fled as soon as he saw Isonhood, that Isonhood observed McGuire's hand moving away from the right side of his body while McGuire was fleeing, and that Isonhood returned to the area where he saw McGuire's arm move and recovered the methamphetamine on the ground within ten feet of McGuire's flight path, and that the methamphetamine was found in a position consistent with it being thrown in the direction he saw McGuire's hand move, taken as a whole, was sufficient for a jury reasonably to infer that McGuire was in actual possession of the methamphetamine and tossed it away while he was fleeing police.

Further, we also find the evidence sufficient for a jury reasonably to infer that McGuire possessed the methamphetamine with intent to distribute it. As noted in the previous section, the Commonwealth presented evidence in the form of testimony from Isonhood that, based on his experience, small plastic bags like those found on McGuire were commonly used to hold drugs, that the quantity of methamphetamine found on McGuire was inconsistent with personal use, and that persons in possession of drugs for personal use are usually found with only one bag and a means of administering the drug. Taken

---

[38] *Id.* at *3.

[39] *Id.* at *10.

12

together, this evidence is sufficient for a reasonable jury to conclude that

McGuire possessed the methamphetamine with the intent to distribute it.

Accordingly, we find that the Commonwealth put forth sufficient evidence

to overcome a motion for directed verdict on the charge of first-degree

possession of a controlled substance. The trial court did not err in denying that

motion.

### 3. The trial court erred in denying McGuire's motion for a directed verdict on the charge of tampering with physical evidence.

Finally, McGuire alleges that the trial court erred in denying his motion

for a directed verdict on the charge of tampering with physical evidence. This

issue is properly preserved for our review.

Specifically, McGuire argues that his act of tossing drugs while being

observed by a police officer during the chase does not meet the criminal act

requirement under the tampering statute. We agree.

KRS 524.100 makes it unlawful for a person to tamper with physical

evidence. In relevant part, that statute provides the following:

> (1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:
>
>> (a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; . . . .[40]

Under the text of the statute, the Commonwealth is required to prove both that

the defendant committed one of the proscribed criminal acts—"[d]estroys,

mutilates, conceals, removes, or alters"—and that the defendant did so with

---

[40] KRS 524.100.

13

the "intent to impair its verity or availability."[41] It is not alleged that McGuire destroyed, mutilated, or altered the evidence, so the specific issue in this case is whether McGuire "concealed" or "removed" the methamphetamine when he tossed it from his flight path while being pursued by Isonhood.

In *Commonwealth v. James*,[42] we noted that KRS 524.100 was based on Section 241.7 of the Model Penal Code, and that twenty-eight other jurisdictions have enacted tampering statutes based on this model provision.[43] In keeping with the courts of those jurisdictions, we adopted a widely-recognized interpretation of our tampering statute that applies to a narrow set of circumstances: "'where a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant and in the presence and view of the police, this conduct does not constitute' tampering by either concealment or removal that will support an evidence-tampering charge."[44]

In adopting this interpretation, we noted several cases from other jurisdictions with MPC-based tampering statutes, one of them being *State v. Lasu*.[45] In that case, the defendant was walking through a service station while being followed by an officer when he pulled a bag of marijuana out of his pocket and dropped it into a cardboard bin of snack foods.[46] The bag landed on

---

[41] *Id.*

[42] 2017–SC–000576, 2018–SC–000066 (Ky. Oct. 31, 2019). As we noted above, *James* is a companion case in that the issues are like the issues we face here, but the two cases were not consolidated.

[43] *Id.* at *14. (citing Model Penal Code § 241.7 (Am. Law Inst. 1985)).

[44] *Id.* at *18–*19 (quoting *In re M.F.*, 734 N.E.2d 171, 178 (Ill. App. Ct. 2000)).

[45] 768 N.W.2d 447, 452 (Neb. 2009).

[46] *Id.* at 449.

top, and the officer immediately retrieved it and arrested the defendant.[47] The Nebraska Supreme Court found these facts insufficient to establish that the defendant had either *removed* or *concealed* the bag of marijuana.[48] In so doing, the Court noted a critical distinction between proving the criminal intent and criminal act elements of the tampering statute: "[e]ven if Lasu meant to make it more difficult to find the contraband and connect it to him, he did not remove it from the scene of the possessory offense, nor did he actually conceal it when he abandoned it."[49]

We also pointed to *Commonwealth v. Delgado.*[50] In that case, the defendant, with an officer right behind him, tossed what the officer observed to be a bag of cocaine onto a garage roof.[51] Interpreting another MPC-based tampering statute,[52] the Supreme Court of Pennsylvania explained that the defendant's "act of discarding contraband in plain view of the police does not

---

[47] *Id.* at 449–50.

[48] *Id.* at 451. Nebraska's tampering statute provides that "[a] person commits the offense of tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal authority, he . . . [d]estroys, mutilates, conceals, removes, or alters physical evidence with the intent to impair its verity or availability in the pending or prospective official proceeding . . . ." Neb. Rev. Stat. § 28-922 (2019).

[49] *Id.* The Court acknowledged that it was not alone in finding conduct like Lasu's to fall short of concealment or removal: "[C]ourts considering effectively identical statutory language have uniformly concluded that when a defendant merely drops, throws down, or abandons evidence in the presence of law enforcement, such conduct will not sustain a conviction for tampering with physical evidence." *Id.* at 451 (citations omitted).

[50] 679 A.2d 223 (Pa. 1996).

[51] *Id.* at 225.

[52] Pennsylvania's tampering statute imposes criminal liability where a defendant "alters, destroys, conceals, or removes any record, document or thing with intent to impair its verity or availability in [an official] proceeding or investigation." 18 Pa.C.S. § 4910.

15

rise to the level of conduct that constitutes the destruction or concealment of evidence as contemplated by the statute."[53]

The facts of this case fall within the narrow rule we announce in *James*. While in pursuit of McGuire, Isonhood observed McGuire moving his arm away from the right side of his body, which the jury reasonably inferred was McGuire's throwing of the methamphetamine. After catching up to McGuire, Isonhood subdued and arrested him and was able quickly and easily to return to the area where he had observed McGuire's arm moving away from his body. There, laying on the ground less than ten feet from McGuire's flight path, Isonhood found the methamphetamine. Under the rule announced in *James*, these facts do not amount to either concealment or removal of the evidence.

The Commonwealth points to several cases to support its position that Kentucky case law is different in that our tampering statute is read more broadly. But those cases are not inconsistent with our holding in this case, as the defendant in each of those cases had placed the evidence in a spot deliberately hidden from the officer's view. In *Commonwealth v. Henderson*,[54] we upheld a tampering conviction where, during a police hot pursuit but outside the presence of any officers, the defendant had placed stolen money under the insole of his shoe.[55] In *Crayton v. Commonwealth*,[56] we upheld a

---

[53] 679 A.2d at 225. The Court also pointed out that the statutory penalty for tampering with physical evidence was greater than the penalty for possessing cocaine. *Id.* Based on this fact, it surmised that the General Assembly could not have "intended the simple act of abandoning evidence in plain view of the police to constitute the commission of an additional crime of a greater degree." *Id.*

[54] 85 S.W.3d 618 (Ky. 2002).

[55] *Id.* at 619–20.

[56] No. 2013–SC–000266–MR, 2014 WL 2811316, at *1 (Ky. June 19, 2014).

16

tampering conviction where the defendant was running from police officers and, while outside the presence of officers, threw a gun into another part of the backyard in which he was found hiding.[57] No officer had observed the defendant toss the gun, and it was only after officers thought to search the area that the gun was recovered.[58] And finally, in *Taylor v. Commonwealth*,[59] we similarly upheld a tampering conviction where the defendant, while being observed by a police officer, placed drugs under the seat of a car in which he was sitting.[60]

By contrast, the facts of this case are unique and unlike those we have considered in the past. As we concluded in the previous section of this opinion, there existed enough evidence for the jury reasonably to conclude that McGuire tossed the evidence while fleeing arrest and in the presence of Isonhood. After arresting McGuire, Isonhood was able quickly and easily to retrieve the evidence from the area where he observed McGuire's throwing motion. We reiterate that the rule announced in *James* applies to a narrow set of circumstances: "where a defendant merely drops or tosses evidence in the presence of a police officer, and the officer can quickly and readily retrieve the evidence, the criminal act of concealment or removal has not taken place."[61] The facts of this case fit squarely within that rule.

---

[57] *Id.*, at *4–*5 (Ky. June 19, 2014).

[58] *Id.*, at *1.

[59] 987 S.W.2d 302 (Ky. 1998).

[60] *Id.* at 303–05.

[61] 2017-SC-000576, 2018-SC-000066, at *20.

17

We also find it necessary to clarify a portion of our case law with respect to establishing the *actus reus* of KRS 524.100. The Commonwealth relies, at least in part, on the fact that the evidence was recovered in an unconventional location to conclude that McGuire committed the act of tampering by concealment or removal under KRS 524.100. But this distinction is not relevant to whether the act occurred. While the location in which the evidence is recovered is relevant to the overall analysis, whether that location is one that is conventional or unconventional with respect to the type of evidence recovered is merely one factor that is relevant to determining whether the defendant acted with the necessary *intent*.[62] So even assuming the bag of methamphetamine was discovered in an unconventional location, it does not necessarily follow that there was sufficient evidence for the jury to conclude that concealment or removal occurred.

In sum, because McGuire merely tossed the evidence while in the presence of Isonhood, and Isonhood, who observed the throwing motion, was able quickly and easily to retrieve the evidence after McGuire was subdued, we hold that McGuire did not conceal or remove the evidence within the meaning

---

[62] We discussed the significance of the conventional-unconventional inquiry in *Gonzales v. Commonwealth*, No. 2011-SC-000466-MR, 2013 WL 1188020, at *1, *14–*15 (Ky. March 21, 2013):

> "One factor the Court recognizes in making the determination of intent to conceal is whether the item was placed in a conventional or unconventional place. Items placed in a conventional place suggest less of an intent to conceal than items placed in an unconventional place, such as placing money in one's shoe as opposed to one's pocket . . . . But the conventional-unconventional inquiry is merely one factor in determining whether there was an intent to conceal evidence, and such a determination should be made by considering the totality of the circumstances."

*Id.* at *14 (citations omitted).

18

of KRS 524.100. Accordingly, the trial court erred in denying the motion for a directed verdict with respect to the charge of tampering with physical evidence.

### III. CONCLUSION.

For the foregoing reasons, we reverse the conviction and sentence for tampering with physical evidence but affirm the remaining convictions. Accordingly, we vacate the trial court's judgment and remand for re-sentencing and a new judgment not inconsistent with this opinion.

All sitting. Minton, C.J., Buckingham, Hughes, and Keller, JJ., concur. Wright, J., concurs in part and dissents in part by separate opinion, in which Lambert, and VanMeter, JJ., join.

WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART: While I concur with the majority as to the other issues, I respectfully dissent from the section of the majority's opinion which eviscerates prosecutorial authority to charge defendants with tampering with physical evidence under the duly enacted KRS 524.100. This section of the majority's opinion takes the evaluation of the facts away from the jury.

McGuire argues that the Commonwealth could not prove that he was in possession of the methamphetamine recovered adjacent to his flight path, and, thus, could not prove he had tampered with it. Further, he argues, relying on the Model Penal Code and the law of other jurisdictions, that the act of dropping contraband on the ground is insufficient to sustain a conviction for tampering. The majority agrees with him. I disagree and would affirm the trial court in full.

KRS 524.100 provides:

19

> A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:
>
> (a) Destroys, mutilates, *conceals, removes* or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; . . .

(Emphasis added.)

The majority's framing of the issue—"the specific issue in this case is whether McGuire *concealed* or *removed* the methamphetamine when he tossed it from his flight path while being pursued by Isonhood"—clearly and unambiguously describes an action "designed to prevent" the evidence from being "used in a proceeding." KRS 524.100, 1974 Kentucky Crime Commission/LRC Commentary.[63] However, once the majority sets up the issue, it adopts a new rule created in the companion case, *James v. Commonwealth*: "where a defendant merely drops or tosses evidence in the presence of a police officer, and the officer can quickly and readily retrieve the evidence, the criminal act of concealment or removal has not taken place." 2017-SC-000576, 2018-SC-000066 at 20. This narrow rule ignores the plain language of the statute, replacing it with a judicially-constructed definition based upon other states' court decisions and wholly lacking in any reference to the actual language of KRS 524.100. The majority holds that "because

---

[63] As we have held: "[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on *any other method or source.* We ascertain the intention of the legislature from *words used in enacting statutes* . . . ." *Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815, 819 (Ky. 2005) (internal citations and quotations omitted). Therefore, if the statute were plain, we would not look to the Commentary for clarification. The majority's position is contrary to the plain language of the statute. If we accept this interpretation, then there would be an ambiguity in the language. Therefore, I turn to the Commentary for a resolution of this ambiguity.

20

McGuire merely tossed the evidence while in the presence of Isonhood, and Isonhood, who observed the throwing motion, was able quickly and easily to retrieve the evidence after McGuire was subdued, . . . that McGuire did not conceal or remove the evidence within the meaning of KRS 524.100." However, I note that these were small, transparent plastic bags thrown ten feet away from a flight path at night. The officer could not see what, if anything, was thrown—only that a throwing motion occurred. Recovery of any evidence was made more difficult by the fact that the throwing motion was made while McGuire was in full flight at night. In the adrenaline-filled full exertion of trying to run McGuire down, the officer had to remember the night landscape, the flight path, and where the throwing motion occurred clearly enough that he could find small, transparent plastic baggies that had been thrown ten feet from McGuire's flight path. While the officer recovered two baggies, we cannot be sure that McGuire did not throw more during his flight that were just not recovered by the officers.

While I disagree with the majority's new rule which adds conditions not contained in the statute, McGuire's conviction for tampering should be affirmed *even under* the judicially-created rule. The evidence might have been found more easily than a drug needle in a haystack, but it was not *easily* recovered.

The majority's new rule is not the appropriate analysis for tampering with physical evidence. The perpetrator's act does not have to result in the actual deprivation of evidence for the defendant to have the requisite *actus reus* required. It was not clearly unreasonable for the jury to find that McGuire attempted to impair availability of the methamphetamine by throwing it as far from himself as possible while fleeing from police. The jury properly found that

21

McGuire "removed" the evidence "to impair its verity or availability in the official proceeding." KRS 524.100(a). This is a question of fact and of evaluation of the evidence properly left to the jury; today, the majority disturbs the jury's findings of fact. Under these circumstances, there was sufficient evidence to leave the matter in the hands of the jury. The record demonstrates that the Commonwealth presented sufficient evidence that would allow a jury to convict McGuire of tampering with physical evidence.

For further elucidation of the issues created by the majority's holding today, imagine two scenarios. In the first, the suspect sees law enforcement and freezes. He is properly patted down, and the officer feels what he believes to be contraband. When the contraband is pulled out, it is illegal. The suspect is charged with the crime of possession. The evidentiary inference—the proof—at trial is straightforward: the defendant possessed illegal contraband. The defendant can argue that the contraband was not his or something similar, but that argument is a clear stretch.

In the second scenario, same as above, when he sees law enforcement, the suspect removes the contraband from his person, and either drops it or throws it. The suspect is charged with possession. The proof and the inferences are different. A defendant was spotted by an officer. As the officer approached, the defendant dropped/threw an unknown item and after defendant was secured, an officer found the item. This item was illegal, and the officer concludes that the defendant possessed illegal contraband. As opposed to the first scenario, the defendant's actions are to rid himself of (remove) the illegal contraband hoping that the officer did not notice. No doubt exists that his "intent [is] to impair the truth or availability of evidence." KRS

22

524.100, 1974 Kentucky Crime Commission/LRC Commentary. Even if the officer witnessed the defendant's actions and discovered the contraband outside of his person the defendant at least has created more defenses to argue at trial in the second scenario: (a) That item was not mine; (b) I dropped/threw a different item than the one picked up by the officer; (c) it was a high-crime area, and the item was not mine; and (d) the officer was mistaken in what he saw.

A defendant separates himself from the item in order to "not possess" it, *i.e.,* he "removes" it from his possession. No viable argument exists that this action was made for any reason other than "the intent to impair its verity or availability in the official proceeding." *Id.* The commentary states "[r]ather, it is sufficient if the defendant believes an official proceeding may be instituted and *if he engages in the proscribed conduct with the specified intent to impair the truth. . . ."* *Id.* (emphasis added). The truth is, the defendant possessed the contraband. By removing (and either dropping or throwing it), is not the defendant engaging in the prohibited conduct? Has he not formed the "specified intent to impair the truth?" If his intent was otherwise, why did the suspect remove and drop the evidence? What other possible reason could there be for the drop? I understand that the majority may consider this statute to be anachronistic and overlooked. They may even consider it to be bad policy. However, the legislature is the proper branch of government to fix this perceived issue.[64]

---

[64] In fact, the 1974 Kentucky Crime Commission Commentary points out that this offense used to be treated as an obstruction of justice, a misdemeanor. Whether we agree with the 1974 decision to enact this statute, the legislature undoubtedly

The statute's commentary sets forth that "[i]f the defendant believed [the evidence] was to be produced or used in a proceeding and his actions were designed to prevent that from occurring, the elements of proof are satisfied." *Id.*, 1974 Kentucky Crime Commission/LRC Commentary. In McGuire's case, these elements are met: (1) a police pursuit implies that any evidence discovered during the chase or post-chase investigation will be used in a future official proceeding, and (2) throwing baggies of methamphetamine away from one's person while fleeing law enforcement is a strategy without a doubt "designed to prevent" that evidence from being used in a future proceeding.

Additionally, nowhere in the statute, its commentary, or relevant Kentucky case law is the presence or absence of law enforcement during a defendant's actions considered the key determinant as to whether the precise elements of the crime were met. Yet, the majority reads the aforementioned language into the statute, thus crippling KRS 524.100 by halting law enforcement's ability to charge defendants with tampering when "in the presence of a police officer." This non-statutorily-based rule that will ultimately give little guidance to trial courts within this Commonwealth as to the application of tampering with physical evidence. A better approach would be to follow the plain language of the statute and its commentary, and allow such charge when the defendant "engages in the proscribed conduct with the specified intent to impair the truth or availability of evidence he believes will be

---

examined the policy surrounding tampering with physical evidence and elected to increase its punishment status, not narrow its use.

24

used" in an official proceeding. KRS 524.100, 1974 Kentucky Crime Commission/LRC Commentary.

The majority insists its holding today is "not inconsistent with our [previous tampering cases], as the defendant in each of those cases had placed the evidence in a spot deliberately hidden from the officer's view." I disagree. The majority's holding today directly conflicts with our precedent and KRS 524.100.

McGuire argues that "[e]ven an assumption that [he] abandoned the methamphetamine found on the ground is not enough to support the conviction." However, this Court held in *Crayton v. Commonwealth*, "[e]vidence discovered in an unconventional location supports a tampering conviction." No. 2013-SC-000266-MR, 2014 WL 2811316, at *4 (Ky. June 19, 2014) (citing *Commonwealth v. Henderson*, 85 S.W.3d 618, 620 (Ky. 2002) (other citations omitted).

In *Mullins v. Commonwealth*, this Court held "pursuit by the police may be required for a conventional placement of the evidence to become tampering." 350 S.W.3d 434, 443 (Ky. 2011). The majority insists that unconventional location is but one relevant factor in determining whether the defendant acted with the necessary intent. I do not believe the distinction between conventional and unconventional location is entirely dispositive of whether the act of tampering occurred. Rather, the conventional-unconventional analysis is included as a factor, because "[t]he jury could reasonably infer intent to impair the availability of the evidence because it was removed to an unconventional place during a pursuit."

25

In *Crayton*, police officers conducted an on-foot pursuit following a robbery. 2014 WL 2811316 at 1. During this pursuit, Crayton utilized a gun to fire shots at the officers. *Id.* The officers found a gun in the yard where Crayton was apprehended. *Id.* Crayton was convicted of the lesser-included offense of attempted first-degree assault, first-degree robbery, first-degree fleeing or evading the police, tampering with physical evidence, and resisting arrest. *Id.* at 2. On appeal, Crayton argued that the trial court erred in denying his motion for a directed verdict of acquittal for the offense of tampering with physical evidence. *Id.* at 3. Specifically, he argued:

> the evidence did not support a finding that he threw the gun away with the intention of altering or concealing it from the police. In support, Crayton asserts that "[his] intent was not to impair the revolver's . . . availability in an official proceeding. [His] intent was to distance himself from the weapon to keep from getting shot and killed by the police.

*Id.*

The *Crayton* court held:

> First, the evidence established that the revolver was found within close enough proximity to Crayton's path of flight that he could have reasonably thrown it. Crayton's argument that he tossed the weapon into an open area in "plain sight" does not render the jury's determination clearly unreasonable. The wisdom of a defendant's chosen hiding spot is not dispositive. *See Taylor v. Commonwealth*, 987 S.W.2d 302, 305 (Ky. 1998).

*Id.* at 4. As in *Crayton*, although McGuire threw the methamphetamine into an open area in plain sight, that does not render the jury's determination clearly unreasonable.

Further, *Taylor v. Commonwealth* is similar to this case. 987 S.W.2d 302 (Ky. 1998). There, Taylor argued on appeal that the trial court erred in denying his directed verdict on the charge of tampering with physical evidence. *Id.* at 305. He supported this argument by stating that by placing cocaine under the

26

seat in plain view of the officers, he did not actually conceal the cocaine because the officers knew where the drugs were. *Id.* This Court held that the denial of the directed verdict was not error. *Id.* The majority even acknowledges that, in *Taylor,* "we . . . upheld a tampering conviction where the defendant, *while being observed by a police officer,* placed drugs under the seat of a car in which he was sitting." This precedent clearly flies in the face of the majority's new rule—without even distinguishing its facts or explaining how such a case fits within the framework of the new rule. In short, if the events in *Taylor* could support a tampering conviction under the majority's new rule, so can the facts in the present case.

Further, the majority cites to *Henderson*[65] and *Crayton* as being "not inconsistent" with its new rule. But, neither of those case place any significance on the whereabouts of law enforcement during the action in question, and the majority's statement that each case is "not inconsistent" with the majority's newly-constructed rule is, at best, disingenuous.

While any member of this Court may believe that tampering with physical evidence charges may sometimes be an exercise in piling on additional charges against a defendant disproportionate to his actions—or bad criminal justice policy—this Court has "long recognized that '[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the

---

[65] In *Henderson,* the Court found sufficient evidence for a tampering conviction when Henderson placed money from a crime into his shoe during a police chase. 85 S.W.3d at 619. The majority in the present case determined, that this act was done "outside the presence of officers." In contrast, the *Henderson* opinion simply mentions that it occurred during a car chase but does not describe the exact testimony of what pursuing officers could see. *Id.* at 620. Even so, the actual act of concealment is what the Court relies upon in upholding the conviction, not the lack of an official law enforcement sightline on the defendant. *Id.*

meaning is plain, then the court cannot base its interpretation on any other method or source.'" *Commonwealth v. Grise*, 558 S.W.3d 923, 929 n.28 (Ky. 2018) (quoting *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (citation omitted)).

"In cases involving statutory interpretations, the duty of the court is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used." *Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky. 2000). The meaning of KRS 524.100 is explicit: if a defendant believes evidence may be used in a future proceeding and he "conceals" or "removes" said evidence, "with an intent to impair its verity or reliability" he may be charged and convicted of tampering with physical evidence. *Id.* McGuire's actions in this case demonstrate a straightforward example of this crime. McGuire knew he was being chased by law enforcement, and his actions were designed to conceal or remove evidence by throwing methamphetamine off his person and into the fray.

It was not clearly unreasonable for the jury to find that McGuire attempted to impair availability of the methamphetamine by throwing it on the ground at night while being pursued by officers. Because I do not endorse the insertion of additional, unrelated language into KRS 524.100 which narrows the breadth and scope of the statute, I respectfully dissent from the majority's opinion regarding KRS 524.100. I would affirm McGuire's tampering conviction.

Lambert and VanMeter, JJ., join.

28

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General

Joseph A. Newberg II
Assistant Attorney General