RENDERED: MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0735-MR

ERIN MONAHAN (NOW ISLER)                                    APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE A. CHRISTINE WARD, JUDGE
ACTION NO. 09-CI-504401

GARVIN[1] SCHILLING                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, JONES, AND KRAMER, JUDGES.

JONES, JUDGE: Erin Monahan (now Isler) ("Mother") appeals the Order
Denying Modification of Custody and Granting Modification of Parenting
Schedule entered by the Jefferson Circuit Court ("family court") on March 23,
2020. Pursuant to the family court's order, Mother and Gavin Schilling ("Father")
retained joint custody of their minor child, H.S. ("Child"), consistent with their

---

[1] While the notice of appeal lists "Garvin" as the appellee's first name, the record establishes that the correct spelling is "Gavin," which we shall use in this opinion.

prior agreement, but Father's parenting time with Child was increased. On appeal, Mother challenges the family court's refusal to allow the court-appointed custodial evaluator, Dr. Jennifer Cebe, to testify about what Child and his treating therapist, Dr. Ginger Crumbo, told Dr. Cebe during the evaluation on the basis that said testimony was hearsay. Having reviewed the record, and being otherwise sufficiently advised, we affirm.

## I. BACKGROUND

The parties have an extensive litigation history before both the family court and this Court. While we have reviewed the entire record, the issues before us at this juncture are relatively discrete. Accordingly, we summarize only the factual and procedural history necessary to a proper understanding of the instant dispute.

Mother and Father were never married but were in a romantic relationship with each other for some time. Child was born in October 2008 while Mother and Father were still a couple. However, approximately a year and a half after Child's birth, Mother and Father ended their relationship. Thereafter, the parties came to an agreement with respect to custody and parenting time. Pursuant to the terms of an agreed order entered on October 10, 2010, Mother and Father shared joint legal custody of Child, and Child's time was divided between the parties with Mother having Child about sixty-five percent of the time. By order

entered July 12, 2012, the 2010 agreed order was modified expanding each parent's weekend time and expanding Father's holiday and vacation time.

Mother and Father are actively involved in Child's life. And, Child has relationships with both sides of his family, including with Mother's husband, Scott Isler ("Stepfather") and Child's paternal grandmother, Rusti Schilling ("Paternal Grandmother"). Even though both parents love and desire to spend time with Child, their parenting styles differ dramatically, and certain disagreements arise from time to time regarding Child's extracurricular activities, schedule, schooling, and medical care. Complicating matters, Child has been diagnosed with Tourette Syndrome, Attention Deficit Hyperactivity Disorder, an anxiety disorder, and a specific learning disorder with impairment in mathematics. Child, who was born prematurely, also takes daily Nutropin growth-hormone injections.

In December of 2011, the family court ordered Child to attend therapy with Dr. Ginger Crumbo. This order was entered in an attempt to help the parties better co-parent Child and understand his needs. In August of 2015, the family court granted Mother's motion to implement Dr. Crumbo's recommendations relating to Child's on-going treatment. Since that time, Child has continued to see Dr. Crumbo approximately once per week. Pursuant to Dr. Crumbo's recommendation, the family court appointed Dr. Jennifer Cebe "to conduct a parenting/psychological evaluation and to communicate with [Dr. Crumbo] as to

her concerns and the specific type of evaluations that she believes would be helpful in her treatment of the minor child."

Dr. Cebe's evaluation was quite extensive. She had Mother and Father fill out questionnaires and conducted clinical interviews of each parent. She observed Child in sessions with each parent and alone. She performed psychological testing of Mother and Father to rule out any personality pathology that might impact parenting as well as to identify personality traits that may impact the parties' ability to co-parent Child. She also interviewed Child; Stepfather; Matt Vevoff, the parties' court-appointed, co-parenting counselor; and spoke with Dr. Crumbo with respect to Child's therapy. Dr. Cebe completed her written evaluation on or about February 18, 2019.[2]

Therein, Dr. Cebe opined that the high conflict between the parties had decreased their ability to co-parent over time and recommended that if the family court concluded that joint custody was no longer workable, Mother should be awarded sole custody. Dr. Cebe further opined that Child would do better with the stability provided by a single, primary caregiver, and recommended Father's timesharing/visitation with Child be reduced to every other weekend Friday

---

[2] Completion of the evaluation was delayed when Father appealed the family court's order for the evaluation on the basis that the family court lacked jurisdiction to order a custodial evaluation where neither he nor Mother had moved to modify custody. We affirmed the family court's order, and discretionary review was denied by the Kentucky Supreme Court. *Schilling v. Monahan*, No. 2016-CA-0842-ME, 2017 WL 2609242 (Ky. App. Jun. 16, 2017).

through Sunday and a two-hour visit during the week. Dr. Cebe indicated that she believed Mother should be selected as the primary caregiver because Mother's home provides better structure and dependability and Child is less anxious in Mother's home. Dr. Cebe further opined that shorter periods of time with Father would help Child build better trust.

Shortly after the completion of Dr. Cebe's written evaluation, on or about February 26, 2019, Mother filed a motion with the family court seeking to modify custody from joint to sole custody in her favor and to reduce Father's time with Child. With respect to custody, Mother cited the parties' inability to agree on major parenting decisions such as the best school for Child, Child's schedule, and Child's medical care. In her motion, Mother stated that the parties' inability to agree placed too much stress on Child and she believed granting her sole custody would eliminate some of that stress. With respect to parenting time, Mother expressed concern about Father's lack of a structured schedule for Child, and cited examples where she did not believe Father consistently administered Child's medications, particularly his growth hormone injections.

Father objected to Mother's request to change custody from joint to sole custody, noting his desire to be involved in Child's life and the many agreements the parties have been able to reach in the past, including a Christian upbringing for Child. He also requested that the parenting time schedule be

modified so that he would receive more time with Child, not less time. He believed that more time with him would have positive effects on Child's development as he believed Mother did not do enough to help Child establish peer-appropriate friendships and to promote outside extracurricular activities such as athletics. Father also maintained that his reduced time with Child limited Child's ability to bond with Father's extended family.

Prior to the family court's hearing on the modification motions, Father subpoenaed Child's treatment records with Dr. Crumbo. Mother responded that she believed the records might be protected by the psychotherapist-patient privilege (KRE[3] 507) and only Child had the right to waive the privilege. Mother suggested that the family court should appoint a guardian *ad litem* ("GAL") to represent Child for the purpose of evaluating whether to challenge Father's subpoena. The family court heeded Mother's suggestion and appointed a GAL for Child. The GAL and Dr. Crumbo objected to Father's subpoena. The family court concluded that the records were privileged and quashed Father's subpoena. *See* Order of 8/2/2019 as amended by Order of 10/15/2020.

In November 2019, the family court conducted a two-day hearing on the parties' motions. Mother; Father; Stepfather; Paternal Grandmother; Child's paternal aunt, Blair Schilling; and Dr. Cebe testified at the hearing. Before Dr.

---

[3] Kentucky Rules of Evidence.

Cebe took the stand, Father moved to exclude Dr. Cebe from testifying to any statement made to her by Child and/or Dr. Crumbo, including statements made by Child to Dr. Crumbo, and for the redaction of all such statements from Dr. Cebe's report and file notes prior to those documents being admitted into evidence. Father argued that the statements by Child and Dr. Crumbo were hearsay since neither was set to testify at the hearing, and that the statements Child made to Dr. Crumbo were further protected by the psychotherapist-client privilege. The family court sustained Father's motion on the ground that the statements were hearsay, and therefore Dr. Cebe was not permitted to testify about her conversations with Child and Dr. Crumbo, and any reference to such statements was redacted from Dr. Cebe's written report prior to admission. The testimony and evidence was admitted by avowal outside the presence of the family court judge.

Following the hearing, the family court entered an order denying Mother's motion to modify custody and reduce Father's timesharing and granting Father's motion for additional timesharing with Child. Specifically, the family court modified the parenting schedule to give each parent equal parenting time with Child by adopting a rotating week on/week off schedule. The family court's order was entered as part of a lengthy thirty-four-page opinion in which the family court extensively summarized and evaluated the oral testimony and other evidence of record.

Of particular importance, the family court laid out its rationale for not following the recommendations made by Dr. Cebe. To this end, the family court noted that Dr. Cebe did not interview Paternal Grandmother, even though it was undisputed that she was a central figure in Child's life; did not review Child's medical records; did not review the medical records (including those pertaining to the mental health) of the parents and did not consult with the parents' treating physician(s) or therapist(s); and only reviewed Child's school records from 2014 and 2015, not the more recent records from 2017, 2018, or 2019.

Mother timely moved for additional findings of fact and to alter, amend, or vacate the family court's order. After the family court denied Mother's motion, she appealed to our Court.[4]

## II. STANDARD OF REVIEW

The family court's decision to limit Dr. Cebe's testimony and require her report to be redacted prior to being admitted into evidence forms the basis of

---

[4] While Mother's brief contains citations to the record, an appellant's brief must also "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v). Mother states in the body section of her brief that she preserved her various arguments for review; however, she failed to indicate where in the record she did so. "[A] brief may be stricken for failure to comply with any substantial requirement" of the appellant rules for briefing. CR 76.12(8). In this case, we have elected not to strike Mother's brief because the issues are relatively insular, and the citations provided throughout have allowed us to conduct a meaningful review. However, counsel is reminded that "[i]t is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). Other panels may not exercise such leniency should counsel fail to follow the briefing requirements in future appeals.

Mother's appeal. "A trial court's ruling on the admission of expert testimony is reviewed under the same standard as a trial court's ruling on any other evidentiary matter." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 578 (Ky. 2000). "An appellate court reviews a trial court's evidentiary rulings for an abuse of discretion[.]" *Werner Enterprises, Inc. v. Northland Ins. Co.*, 437 S.W.3d 730, 734 (Ky. App. 2014). "A trial court abuses its discretion when its decision is 'arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Pope v. Commonwealth*, 617 S.W.3d 364, 373 (Ky. 2021) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

### III. ANALYSIS

Mother argues that the family court should not have limited Dr. Cebe from testifying about either the statements Child made to his therapist, Dr. Crumbo, which she shared with Dr. Cebe, or statements that the Child and Dr. Crumbo made directly to Dr. Cebe. Likewise, Mother argues that the family court erred in directing Dr. Cebe's written evaluation report to be redacted to remove such statements prior to its admission.

Father moved to exclude the subject statements on the basis that they were hearsay and that Child's statements to Dr. Crumbo were further protected by the psychotherapist-patient privilege pursuant to KRE 507. The family court sustained Father's objection on hearsay grounds. Mother argues the family court

abused its discretion when it did so, and requests us to vacate the family court's decision of May 7, 2020, denying her motion for sole legal custody, and remand this matter to the family court for another hearing with instructions to permit Dr. Cebe to testify concerning Child's and Dr. Crumbo's statements and to admit Dr. Cebe's unredacted report into evidence.

KRE 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The statements at issue fall within the hearsay rule, and Mother has failed to identify any valid exception that would allow their introduction. Nevertheless, Mother argues that the statements should have been admitted pursuant to KRE 703(a):

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence.*

(Emphasis added.) "Stated differently, the facts and data that an expert relies upon in forming his or her opinion do not need to be admissible in order for the expert's opinion itself to be admissible." *Exantus v. Commonwealth*, 612 S.W.3d 871, 899 (Ky. 2020).

Thus, "[a]n expert witness may express a testimonial opinion that is based in part upon hearsay evidence[.]" *American Hardware Mut. Ins. Co. v. Fryer*, 692 S.W.2d 278, 281 (Ky. App. 1984). This does not mean, however, that the expert is entitled to testify to the exact nature of the hearsay statements relied upon in reaching her ultimate conclusion. "KRE 703(b) does allow evidence not otherwise admissible to come in [at the discretion of the court] to explain the basis of an expert's opinion." *Hoff v. Commonwealth*, 394 S.W.3d 368, 374 (Ky. 2011). However, before allowing such information to be presented the court must determine it is "trustworthy, necessary to illuminate testimony, and unprivileged[.]" KRE 703(b).

It is undisputed that Dr. Cebe based her opinion, in part, on her interviews with Child and Dr. Crumbo. In fact, the family court acknowledged as much in its opinion noting that it understood Dr. Cebe's opinion was based, in part, on Child's preferences and the opinions of Dr. Crumbo. The family court did not need to know the exact nature of Child's and Dr. Crumbo's statements to evaluate the persuasiveness of Dr. Cebe's conclusions and recommendations. Given that this was a bench trial as opposed to a jury trial, we are confident that the family court appropriately considered whether it needed to hear the exact statements to illuminate Dr. Cebe's testimony. *See Hoff*, 394 S.W.3d at 374. We cannot conclude that the family court's decision not to allow the hearsay statements into

-11-

evidence prejudiced Mother, especially where the family court's decision to depart from the recommendations had nothing to do with the statements.

Finally, Mother argues the family court erred in quashing Father's subpoena for Dr. Crumbo's records. Before us, she now argues that the records should not have been protected by the psychotherapist-patient privilege. We believe her argument in this regard is disingenuous at best. Mother did not seek the records; they were sought by Father. And, Mother did not stake out an affirmative position when this issue was being argued before the family court; however, she brought up the privilege, asserted that neither Mother nor Father could waive it on behalf of Child, and suggested appointment of a GAL to represent Child's interests. Now that Mother believes the records would be favorable to her case, she complains about the subpoena having been quashed, a subpoena Father, not she, issued in the first place. Had Mother desired to have Dr. Crumbo testify she could have included her on her witness list. She did not. Moreover, it is clear that Dr. Cebe's report factored Dr. Crumbo's treatment of Child into its final conclusions, a fact the family court was well aware of and took into consideration. Accordingly, we find no reversible error with respect to Dr. Crumbo's records.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court.

-12-

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| William D. Tingley<br>Louisville, Kentucky | Ellie T. Schilling<br>New Orleans, Louisiana |
| | J. Baxter Schilling<br>Louisville, Kentucky |