# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 14, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0514-MR

CHRISTOPHER HUGHES                                               APPELLANT

V.
                ON APPEAL FROM MONTGOMERY CIRCUIT COURT
                HONORABLE WILLIAM EVANS LANE, JUDGE
                NO. 21-CR-00125

COMMONWEALTH OF KENTUCKY                             APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Christopher Hughes was convicted of first-degree trafficking (more than two grams of methamphetamine), possession of drug paraphernalia, first-degree possession of a controlled substance, and being a first-degree persistent felony offender. The trial court sentenced Hughes to an enhanced sentence of twenty years in prison in accordance with a Montgomery Circuit Court jury's recommendation. Hughes now appeals as a matter of right. Finding no error, we affirm the judgment of the Montgomery Circuit Court.

## FACTS AND PROCEDURAL HISTORY

On January 12, 2021, while patrolling what he described as a high narcotics area, Detective Jarrod Nester of the Montgomery County Sheriff's Office observed a vehicle leaving a known narcotics house. Detective Nester asked dispatch to run the license plate of the vehicle and dispatch advised him

to verify proof of insurance.  Detective Nester effectuated a stop on the vehicle which Christopher Hughes was driving.  Hughes was unable to produce either a driver's license or proof of insurance, although he did produce an identification card.  Hughes agreed to a search of the vehicle.

When Hughes stepped out of the vehicle, a crystal-like substance fell from his hooded sweatshirt and onto his jeans.  Hughes admitted the substance was "ice," which is a common street name for methamphetamine.  At that point, Detective Nester placed Hughes under arrest.  Detective Nester retrieved a golf ball-sized piece of methamphetamine from Hughes's sweatshirt pocket.  When he checked Hughes's waistband, he found a plastic bag full of meth (that had burst) tucked into Hughes's pants.

Detective Nester waited for backup to arrive.  A further search of Hughes revealed approximately $6,500 in cash and six pills.  The officers found more methamphetamine around the driver's seat of the vehicle and a scale tucked between the seat and the console.  The Kentucky State Police laboratory testing revealed that the methamphetamine weighed approximately seventy-one grams, and the six pills recovered were a mixture of hydrocodone and acetaminophen.

During trial, Hughes testified that he was a methamphetamine user and that he used between seven and nine grams of meth every day.  He also stated that he would buy as much methamphetamine as he could with what money he had so he did not have to continuously drive back and forth to obtain more.  Hughes estimated that seventy-one grams would last him about five to six days

2

and explained that he received the seventy-one grams of methamphetamine as a gift from a guy he met at Taco Bell. He also testified that he recently earned $4,200 in cash by repairing a barn for Bobby Thornsburg.

A jury convicted Hughes of first-degree trafficking (more than two grams of methamphetamine), possession of drug paraphernalia, first-degree possession of a controlled substance, and being a first-degree persistent felony offender. The trial court sentenced Hughes to an enhanced sentence of twenty years in prison in accordance with the jury's recommendation. Hughes now appeals as a matter of right.

## ANALYSIS

On appeal, Hughes argues that (1) the trial court erred in allowing the Commonwealth to cross-examine him regarding pending trafficking charges; (2) the trial court erred in allowing the Commonwealth to cross-examine a witness about his potential bias or motivation to testify; (3) the trial court erred in allowing evidence to distinguish drug trafficking from mere possession; and (4) this Court should reverse for cumulative error.

### I. The Commonwealth's cross-examination of Hughes was permissible.

Prior to trial, Hughes filed a motion in limine to exclude reference to his prior convictions and pending indictments during the guilt phase of trial. The Commonwealth noted it had no intention of introducing that evidence unless something happened to open the door. The trial court held that the evidence would be excluded.

3

During re-direct examination of Hughes, the following exchange occurred:

> **Defense counsel**: Chris, have you ever been convicted of trafficking in drugs?
>
> **Hughes**: Never.
>
> **Defense counsel**: You ever been charged with it, other than here recently?

Before Hughes answered the question, the prosecutor asked to approach the bench. The trial court conducted a bench conference.

> **Prosecutor**: Yeah, so he just opened the door to the motion in limine that we said we weren't – that he has four other pending trafficking charges in our circuit. He asked if he has been charged with any other besides this. So I just want to make sure the court's aware because the Commonwealth will requestion regarding this.
>
> **Trial court**: Alright.
>
> **Prosecutor**: Thank you.
>
> **Defense counsel**: I'll withdraw that.
>
> **Trial court**: I think we're clear cut there.

When re-direct examination continued, Hughes confirmed he had no prior convictions for selling drugs.

The Commonwealth again cross-examined Hughes and the following exchange occurred:

> **Prosecutor**: Mr. Hughes, how many felonies do you currently have pending for you . . . for trafficking?
>
> **Hughes**: I have no idea.
>
> **Prosecutor**: Do you not remember the other four trafficking charges?
>
> **Hughes**: Four, I guess, yeah, besides this one, maybe.

4

**Prosecutor**: Okay. One of those is for forty some grams of meth in Bath County, is that accurate?

**Hughes**: Did you find meth on me in Bath County?

**Prosecutor**: Mr. Hughes, do you currently have that indictment pending?

**Hughes**: Did you find methamphetamine on me in Bath County?

**Prosecutor**: Mr. Hughes, do you currently have that indictment pending?

**Hughes**: Does that make me guilty?

**Prosecutor**: Can you answer my question, yes or no?

**Hughes**: Does that make me guilty?

**Prosecutor**: Yes or no, Mr. Hughes.

**Hughes**: Do what, do I have an indictment in Bath County? I've got indictment in Bath County in two or three years.

**Prosecutor**: Okay, so you have three other charges, actually four for trafficking in narcotics, correct?

**Hughes**: I guess it's indictment, yeah.

**Prosecutor**: Thank you.

Defense counsel did not object to the Commonwealth's questions.

Defense counsel again questioned Hughes and began to ask about the pending charges, referencing "every one of those for similar conduct, where they're claiming you possessed . . . ." At that point, Hughes cut him off and interjected that every indictment he has is for possession, "except they've indicted me for trafficking." He stated he has never sold or traded methamphetamine, and that he got pulled over "with drugs on me and they've indicted me for trafficking." Defense counsel referenced Detective Nester's prior testimony about confidential informants and Hughes stated he has never sold dope.

5

The parties dispute whether this issue is preserved. The Commonwealth argues that defense counsel's failure to object to the Commonwealth's question paired with defense counsel's follow-up question regarding the pending charges amounts to waiver. Further, since Hughes did not specifically request palpable error review, this Court should decline to consider his argument. Hughes argues this issue is preserved by the Commonwealth arguing that defense counsel opened the door to introduce evidence of the pending trafficking charges.

By a narrow margin, we conclude this issue is preserved for review. Although the Commonwealth initiated the bench conference where the parties and the trial court discussed defense counsel questioning Hughes about pending indictments, defense counsel stated he withdrew the question. In addition, the trial court stated, "I think we're clear cut there," which seemingly cut off further discussion about opening the door and the proper line of questioning. Although Hughes did not object to the Commonwealth's questions regarding the pending trafficking charges, in *Norris v. Commonwealth,* 89 S.W.3d 411, 415 (Ky. 2002), this Court held that an objection to the inadmissible evidence is not necessary in order to rely on the "opening the door" doctrine. Therefore, we review this evidentiary issue for an abuse of discretion. *Ward v. Commonwealth,* 587 S.W.3d 312, 332 (Ky. 2019). We must determine whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

6

"Generally stated, 'opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof." *Commonwealth v. Stone,* 291 S.W.3d 696, 701-02 (Ky. 2009). Prior to trial, the trial court ruled that evidence of the pending indictments was inadmissible. However, defense counsel specifically asked Hughes whether he had any pending trafficking charges other than the pending charges in the present case, which directly introduced a topic that the trial court deemed inadmissible. The Commonwealth countered by eliciting from Hughes more information about those other pending trafficking charges.

Hughes notes that he did not answer defense counsel's question about other pending trafficking charges, and that defense counsel withdrew the question during the bench conference. But in any event, defense counsel interjected the issue of Hughes's other pending trafficking charges despite the earlier ruling that such evidence was inadmissible. Although Hughes did not answer defense counsel's question, the harm was already done. A reasonable juror may have inferred that Hughes's answer would have been no because his own lawyer was raising the issue. It thus became necessary for the Commonwealth to rebut that untrue suggestion to the jury.

Hughes argues that the evidence of other pending trafficking charges was not relevant to whether Hughes trafficked in the present case, and that the trial court neglected to conduct a proper balancing of the probative value against the prejudicial effect of the evidence pursuant to Kentucky Rule of Evidence

7

(KRE) 403. Defense counsel interjected the topic of any pending trafficking charges, an inadmissible topic. The Commonwealth therefore merely elicited that Hughes has four pending trafficking charges, and that one of those charges involved forty grams of methamphetamine. The information elicited by the Commonwealth was minimal, at best, and hardly constitutes a "storm of evidence" or qualifies as "unnecessarily detailed and improperly inflammatory" as Hughes describes in his brief.

In addition, we further highlight defense counsel's line of questioning. Prior to asking about other pending trafficking charges, defense counsel asked whether Hughes had any trafficking convictions, which thereby allowed Hughes to establish that he had no prior trafficking convictions. After the Commonwealth established that Hughes had four other pending trafficking charges, defense counsel again established that Hughes had no convictions for selling drugs whatsoever. Thus, because the jury learned only that Hughes had pending charges, and Hughes clarified he had no convictions, the resulting prejudice to Hughes was significantly lessened.

Because defense counsel opened the door to Hughes's other pending trafficking charges, the trial court properly allowed the Commonwealth to establish that Hughes had four other pending trafficking charges. This minimal testimony does not constitute an abuse of discretion and therefore there was no error.

## II. The trial court properly permitted the Commonwealth to impeach a witness's testimony.

Hughes argues that the trial court erred in permitting the Commonwealth to question Bobby Thornsburg about Thornsburg's sisters' pending trafficking charges. To explain why the officers found Hughes in possession of so much cash, Hughes testified that Bobby Thornsburg recently paid him $4,200 in cash to work on a barn. Hughes also testified that he dated one of Thornsburg's sisters and that was how he secured the barn job.

Thornsburg testified at trial and on cross-examination the prosecutor asked Thornsburg about who his sisters were. Thornsburg responded "you know who they are." The prosecutor asked whether they had pending trafficking charges. Defense counsel objected, arguing this was improper impeachment, but the prosecutor claimed that defense counsel brought up Thornsburg's relationship with Hughes. Hughes's relationship with one of Thornsburg's sisters, and that the evidence of the sisters' pending trafficking charges was evidence of Thornsburg's potential bias – that he was motivated to testify against the Commonwealth. The trial court allowed the testimony, stating that Thornsburg opened the door by answering that the prosecutor knew who his sisters were in response to the prosecutor's question. The prosecutor continued cross-examining Thornsburg, eliciting testimony that he was a surety for one of his sister's bond on her drug trafficking charges in Bath County.

9

A trial court's evidentiary rulings are reviewed for an abuse of discretion. *King v. Commonwealth,* 554 S.W.3d 343, 358 (Ky. 2018), *overruled on other grounds by Johnson v. Commonwealth,* 676 S.W.3d 405 (Ky. 2023). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English,* 993 S.W.2d at 945.

Pursuant to KRE 611(b), "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." One method by which an impeaching party may discredit a witness's testimony on cross-examination is by "revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues . . . in the case at hand." *Davis v. Alaska,* 415 U.S. 308, 316 (1974). "Exposing a witness's bias or motivation to testify is 'a proper and important function of the constitutionally protected right of cross-examination.'" *Commonwealth v. Armstrong,* 556 S.W.3d 595, 600 (Ky. 2018) (quoting *Davis,* 415 U.S. at 316). In fact, it is "one of the most crucial goals of cross-examination." *Baker v. Kammerer,* 187 S.W.3d 292, 295 (Ky. 2006).

Here, the prosecutor asked Thornsburg about his sister's pending trafficking charge to illustrate that he had a reason to be biased or prejudiced against the Commonwealth. Hughes argues that an impeaching crime must be a felony conviction, and not a pending charge, citing *Iles v. Commonwealth,* 476 S.W.2d 170 (Ky. 1972). But the purpose of establishing that Thornsburg's sisters had pending trafficking charges was not to impeach Hughes or

10

prejudice him, but rather to establish a possible motivation for Thornsburg's testimony against the Commonwealth.

Hughes called Thornsburg as a witness to provide testimony to explain why officers found Hughes in possession of such a large sum of cash, i.e., that Thornsburg had recently paid him $4,200 to repair a barn. As Detective Nester testified, the large amount of cash suggested trafficking rather than mere possession. The Commonwealth merely revealed Thornsburg's possible bias or an ulterior motive in testifying as to an issue in the case at hand. *Davis,* 415 U.S. at 316. Further, Thornsburg's response that the prosecutor knew who his sisters were certainly created an inference that they were involved in criminal acts in some way – this would explain Thornsburg's allegation that the prosecutor was familiar with his sisters. This is permissible impeachment, and the trial court did not abuse its discretion in permitting the testimony.

### III. The trial court properly admitted Detective Nester's testimony based on his knowledge and experience of narcotics users and dealers.

Next, Hughes argues the trial court erred by admitting Detective Nester's testimony based on his knowledge of and experience with narcotics users and dealers. He asserts that this testimony amounted to Detective Nester testifying to the ultimate issue of fact in the case – whether Hughes was trafficking or simply in possession of methamphetamine. Hughes admits this claim is unpreserved and requests palpable error review pursuant to Rule of Criminal Procedure (RCr) 10.26.

11

Palpable error review allows reversal when "manifest injustice has resulted from the error." *Elery v. Commonwealth,* 368 S.W.3d 78, 98 (Ky. 2012) (quoting RCr 10.26). Such an injustice occurs when there is a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006). "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Id.* at 5.

During direct examination, the Commonwealth asked Detective Nester why he charged Hughes with trafficking instead of possession. Detective Nester explained the substantial amount of methamphetamine combined with the scale, which is often used by dealers, and the large amount of unexplained cash indicated trafficking rather than mere possession. He explained that, in comparison, he only charged Hughes with possession of hydrocodone rather than trafficking because possessing six pills was more indicative of personal use.

Hughes argues that while a police officer is permitted to testify about drug transactions, law enforcement tactics, and terminology, they may not testify as to determinations of fact. *Sargent v. Commonwealth,* 813 S.W.2d 801, 802 (Ky. 1991). Further, Hughes asserts that Detective Nester's testimony amounted to an opinion on the ultimate issue of whether he was guilty of

12

trafficking. As such, he asserts that he was denied a fair trial, fundamental fairness, and due process. We disagree.

In *McGuire v. Commonwealth,* 595 S.W.3d 90, 93 (Ky. 2019), an officer testified that, based on his experience, the quantity of methamphetamine recovered from the defendant was inconsistent with personal use, the small plastic bags found on the defendant's person were commonly used to carry drugs, and that persons in possession of methamphetamine for personal use usually only possess a small bag of methamphetamine and are found with some means of administering the drug. The defendant argued the officer impermissibly expressed his opinion on the ultimate issue of whether the defendant was guilty of trafficking. *Id.* The Court found no palpable error in the officer's testimony.

In holding that there was no palpable error, the Court relied on *Stringer v. Commonwealth,* 956 S.W.2d 883, 885 (Ky. 1997), in which the defendant was convicted of first-degree sodomy and first-degree sexual abuse. An expert testified at trial that his examination of the victim revealed some vaginal tearing and partial destruction of the hymen and that those findings were compatible with the victim's self-reported history and "something being inserted in there, and, trying to stretch it." *Id.* at 889. The Court held that the testimony was admissible and explained that it was not an opinion as to the ultimate issue of whether the defendant was guilty but rather a relevant evidentiary fact tending to make the ultimate fact of guilt more or less probable. *Id.* at 891-92.

13

In analyzing and applying *Stringer,* the *McGuire* Court reasoned that "an opinion that a result is consistent with a factual scenario is not an opinion that the scenario occurred." *McGuire,* 595 S.W.3d at 94. Likewise, this Court has reached similar conclusions in *Kroth v. Commonwealth,* 737 S.W.2d 680 (Ky. 1987) (holding that the trial court did not err in allowing an officer to testify as to his opinion that the defendant possessed pills for sale, not for personal use), and *Sargent,* 813 S.W.2d 801 (permitting police officers' testimony, acting as experts, to express their opinion that a large quantity of marijuana paired with unique packaging led to their conclusions that the defendant possessed for sale, not personal use).

Likewise, in this case Detective Nester offered his opinion that, based on his experience, the evidence discovered was consistent with trafficking and not personal use. He never stated whether he believed Hughes was guilty of trafficking. Detective Nester testified that he was familiar with the major drugs in the area (methamphetamine and heroin), typical user amounts (0.1 to 0.2 grams), the costs of the drugs ($20-$30 depending on type), and various street names for the drugs. He also explained his familiarity with typical items users have, such as pen shafts, glass pipes, or needles to ingest the drugs. "This type of expert opinion has been almost routinely admitted in drug cases." *Ordway v. Commonwealth,* 391 S.W.3d 762, 777 n.6 (Ky. 2013). Additionally, this testimony regarding knowledge and experience is necessary to discuss trafficking versus personal use. The caselaw is clear. As such, this testimony was permissible and there was no error.

14

## IV.    The cumulative error doctrine is inapplicable.

Finally, Hughes argues cumulative error, "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth,* 313 S.W.3d 577, 631 (Ky. 2010).  Because we conclude that no errors occurred, the cumulative error doctrine does not apply.

### **CONCLUSION**

For the foregoing reasons, the judgment of Montgomery Circuit Court is affirmed.

All sitting.  VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., concur.  Thompson, J., concurs in result only.


COUNSEL FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General